THE STATE, ON RELATION OF BRISON, Respondent, v. LINGO, Appellant.

1. A proceeding by information in the nature of a *quo warranto* is a civil and not·a criminal proceeding; consequently, in the county of St. Louis, the circuit court may entertain jurisdiction thereof.

2. A power to remove from office necessarily includes a power to suspend from office.

3. By the thirty-fifth subdivision of the second section of the third article of the amended charter of the city of St. Louis, of March 3, 1851, (Rev. Ord. 1856, p. 139,) the mayor and city council were empowered "to regulate the election of all the elective city officers, and provide for removing from office any person holding an office created by this act or by ordinance, not other wise provided for." The seventh section of the fourth article of said charter contained the following provision : "The mayor shall have power to nominate, and by and with the consent of the board of aldermen to appoint, all city officers not ordered by this act to be otherwise appointed; also, to suspend, and with the consent of the board of aldermen to remove, any city officer except those elected by the people." (Rev. Ord. 1856, p. 142.) *Held*, that the city council might, by ordinance, confer upon the mayor the power to suspend a city officer elected by the people.

*Appeal from St. Louis Circuit Court.*

The facts sufficiently appear in the opinion of the court.

*Bland & Coleman*, for appellant.

I. The court erred in striking out the demurrer to the *quo warranto*. The demurrer was well taken and should have been considered and sustained.

II. The court below, by overruling the motion for judgment, interposed by the relator to the plea of appellant, adjudged and determined judicially that such plea was a good

State, on relation of Brison, v. Lingo.

answer to the proceedings on the part of the relator. That judgment and determination was in force at the time of the rendition of the judgment of ouster and is still in force. The judgment of ouster was subsequent to and in direct conflict with the judgment rendered upon the motion for judgment. It should not be allowed to stand. (See McAdams v. McHenry, 21 Mo. 413.)

RICHARDSON, Judge, delivered the opinion of the court.

This proceeding was an information in the nature of a *quo warranto*, prosecuted in the circuit court of St. Louis county by the circuit attorney of that circuit, in the name of the state, at the relation of Brison, against the defendant, for unlawfully exercising the office of superintendent of the work-house of the city of St. Louis. It was alleged that the defendant had been duly elected to said office, and the term for which he had been elected had not then expired, but that the mayor of the city had suspended him from office and appointed the relator in his stead pursuant to the provision of the charter and ordinances of the city; and that the defendant had refused to obey the order suspending him from office. The ordinances and acts of the mayor in the premises were set out at length.

It appears from the record that the defendant appeared and filed a demurrer to the information, to which there was a joinder, and the demurrer being heard by the court it was ordered that the same be stricken from the files, and leave was given defendant to plead. The defendant thereupon filed a special plea to the information and also an answer. The plaintiff then filed a motion for judgment notwithstanding the plea and answer, and the answer being withdrawn by the defendant the motion was overruled and leave given to the plaintiff to reply or demur. A demurrer was then put in to the plea, which was sustained and judgment given on the demurrer.

The first objection made is to the jurisdiction of the court. The statute of 1845, concerning writs of *quo warranto*, con-

fers jurisdiction on the circuit courts ; but it is said that the jurisdiction in such cases is taken from the circuit court of this county by the act creating the criminal court, (R. C. 1845, p. 318, § 3,) which declares that " the circuit court of St. Louis shall not hereafter exercise original jurisdiction in any criminal case," &c.; and the inquiry then arises, is this a criminal case ? Formerly a *quo warranto* information was a criminal proceeding, but for a great while it has been applied to the simple purpose of trying a civil right, and regarded as a remedy to try the right to an office ; it is the nature of a civil proceeding, and is now so held, though criminal in some of its incidents. (4 Black. Com. 312 ; Cole on Informations, 413, 172 ; 54 Law Lib. ; Commonwealth v. Brown, 1 Serg. & Raw. 385 ; Commercial Bank of Rodney v. State, 4 Smedes & M. 490 ; 2 Kydd on Corp. 439 ; State Bank v. State, 1 Blackf. 272 ; Commonwealth v. Brickett, 2 Va. cases, 51 ; Rex v. Francis, 2 T. R. 484 ; Angell on Corp. 686 ; People v. Richardson, 4 Cow. 102, note.)

We do not understand why the court, after considering the demurrer to the information, ordered it to be stricken from the files. There is no precedent for such practice ; but the defendant has not been injured by it, because the plaintiff's demurrer to the plea, standing on the record, will reach back to any substantial defect in his own pleading, and the case can now be considered as if there was a demurrer in the record aimed directly at the information.

The demurrer to the information was properly overruled, and the charges which the mayor filed with the register as the groundwork of the order suspending the defendant were *prima facie* sufficient to authorize the order provided he had the legal power to make it.

The second section of the third article of the charter of 1851 contains an enumeration of the legislative power to be exercised by the mayor and city council, among which is the following : " To regulate the election of all the elective city officers, and provide for removing from office any person holding an office created by this act, or by ordinance not

otherwise provided for. (35th clause.) The power to re-move necessarily includes the minor power to suspend ; and this clause of the charter is a warrant for the ordinance, subsequently passed, concerning the suspension and removal of city officers. (Rev. Ord. 1856, p. 580.) This ordinance provides that the mayor shall have power to suspend from office any officer who shall wilfully violate any of his official obligations. (Sec. 1.) Such suspension shall be effected by an order filed by the mayor with the register, accompanied with a statement of the charges upon which the same is founded ; a copy of which order and charges shall be imme-diately delivered to the officer suspended ; after which deliv-ery such officer shall not exercise any of the duties of the office from which he shall have been suspended, under a penalty of not less than fifty dollars." (Sec. 2.) "Imme-diately upon the suspension of an officer the mayor shall appoint a person to fill the office for the time being." (Sec. 3.) . It then directs that the mayor shall immediately lay the charges before the city council, whose duty it is to pro-ceed, without unnecessary delay, to investigate the charges and to remove the officer if found guilty.

This ordinance conferred upon the mayor the power to suspend the defendant ; and it seems that he exercised the power according to the forms of law. We are referred to the seventh section of the fourth article of the charter, which it is insisted denies to the mayor the power to suspend an offi-cer elected by the people. That section is as follows : " The mayor shall have power to nominate, and, by and with the consent of the board of aldermen, to appoint all city officers not ordered by this act to be otherwise appointed ; also, to suspend, and, with the consent of the board of aldermen, to remove any city officer, except those elected by the people," &c. There is no limitation in this section on the power to suspend any officer, whether elected or appointed, and the words " except those elected by the people," qualify not the power to suspend, but the power to remove elective officers even with the concurrence or joint action of the board of

aldermen. The city council is composed of two boards—the board of aldermen and the board of delegates; and though, as to the officers appointed by the mayor and confirmed by the board of aldermen, the right of removing such resides in the powers that appoint and confirm, yet as to officers elected by the people, they can only be removed by the city council, which represents the whole body politic. It can not be maintained that officers elected by the people are beyond the power of removal at all, for such a construction of the seventh section of the fourth article would do away with the thirty-fifth clause of the second section of the third article, which expressly confers on the city council the power to provide by ordinance for removing from office any person holding an office created by the charter or by ordinances.

The ordinance made under the authority of the charter regulated the manner of trying a suspended officer on charges preferred by the mayor, and the court had no right to investigate the truth of the charges made by the mayor in this case, or in anywise to usurp the functions of the city council. The court had only to see that the mayor had pursued his authority, and that the charges on their face warranted his order suspending the defendant, and the demurrer therefore was properly sustained to the plea which sought to change the venue of the trial and to put in issue the truth of the charges.

Judge Scott dissents on the question of the jurisdiction of the circuit court, but Judge Napton concurring, the judgment will be affirmed.