JAMES GREGORY, Respondent, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant.

Plaintiff was, in 1879, employed by the commissioners of excise of the city of New York as an inspector of excise. On December 16, 1880, he received notice that he had been, by resolution of the excise board, "suspended without pay," and after that time he was not allowed to render any services. He frequently attended at the office of the excise board and offered to discharge the duties of inspector. He never received any notice of dismissal. In an action to recover salary claimed to be due it was conceded that the board of excise commissioners had power to remove their employes, and defendant claimed that the power to suspend was included therein. *Held,* untenable; that there is nothing in the power to remove or expel which necessarily and in all cases includes the power to suspend, and the latter power may not be implied from the mere grant of the former; that while there might be cases where such an inference might be drawn from the general scope and nature of the act granting the power, there was nothing in this case justifying it.

Also, *held,* that the tenders of performance made by G. were sufficient.

*Shannon* v. *Portsmouth* (54 N. H. 183) disapproved.

(Argued March 28, 1889; decided April 16, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 26, 1887, which affirmed a judgment in favor of plaintiff, entered upon a verdict directed by the court.

This action was brought by plaintiff to recover salary claimed to be due him as inspector of excise in the city of New York from December 15, 1880, to September 1, 1881.

The facts are sufficiently stated in the opinion.

*William C. Turner* for appellant. The resolution of December fifteenth, by which the board of excise suspended

the plaintiff from duty without pay, of which notice was communicated to the plaintiff, is a valid exercise of the power of the commissioners, and precludes the plaintiff from recovery. (Dillon on Mun. Corp. .271, note; *Shannon* v. *Portsmouth*, 54 N. H. 183; *Westbury* v. *Kansas City*, 64 Mo. 493; *Wayne Co.* v. *Benoit*, 20 Mich. 176; *Attorney-General* v. *Davis*, 44 Mo. 176; *Primm* v. *Carondelet*, 23 id. 22), The plaintiff was a mere employe, having no fixed term of employment, whom the excise commissioners could, therefore, employ, discharge, re-employ at pleasure, day by day, as their convenience might require; he was, therefore, duly discharged by the notice of suspension from duty and pay, and until re-employed, at the pleasure of the board, his discharge continued. (*People* v. *Board of Police*, 75 N. Y. 42; *Sullivan* v. *Mayor, etc.*, 47 How. Pr. 491.)

*C. W. West* for respondent. A clear and certain contract of hiring cannot be terminated by the master save by his unqualified dismissal of the servant, or other unequivocal act. (*Alker* v. *Mayor, etc.*, 27 Hun, 413, 415; *McCoy* v. *Mayor, etc.*, 46 id. 268.)

PECKHAM, J. The claim that the plaintiff was not an employe of the defendant does not seem to have been raised upon the trial. It was not included as a ground in the motion for a nonsuit made by the defendant, and does not seem to have been raised by any proper exception taken in the progress of the trial. The defendant, at the end of the case, asked the court to direct the jury to find a verdict for the defendant, and never asked that any question of fact should be submitted to it. The court was, therefore, placed in the position of the jury upon any such question, and the decision thereof by the court is binding upon us if there were any evidence to sustain it.

The trial judge was amply justified by the evidence in holding, as a fact, that the plaintiff never received any notice of dismissal, and we are concluded by such finding. The only question that is left for discussion is, whether the resolution of

the commissioners of excise, which assumed to suspend the plaintiff indefinitely, and without pay, from the performance of his duties was authorized. It is claimed that the power of the commissioners to suspend their employes was included in the conceded power to remove them. The question has not been decided in this state, but in New Hampshire the Supreme Court has held that the power to remove did include the power to suspend. (*Shannon* v. *Portsmouth*, 54 N. H. 183.) In that case it was merely stated in the opinion that it did not require any argument to show that the power to remove must include the power to suspend, and hence the learned court made use of none in deciding the question. The note to section 151 of Dillon on Municipal Corporations was cited as authority for the proposition. I think the section (151) is the same, in substance, as section 247 of the third edition of that work in two volumes. I have not found anything in the text of the learned author which would furnish any reason for the decision of the New Hampshire court. In the note to section 247 some cases are referred to, and, in one of them, it was assumed that what is called therein the minor power to suspend was included in the power to remove. (*State* v. *Lingo*, 26 Mo. 496.) In *State* v. *Chamber of Commerce of Milwaukee* (20 Wis. 63) the board of directors had assumed to suspend a member. The corporation was given power to expel. The court held that the power to suspend was reposed in the corporation, and could not be delegated to the board of directors, and hence the board had proceeded without authority. The suspension of the member, it was said, was a qualified expulsion, and, whether it was called suspension or expulsion, it disfranchised him either temporarily or permanently; and, as he was suspended by the board of directors without a vote of the members of the corporation, his suspension was unauthorized. There may be some distinction between the power to expel or, in the technical language of the books, to disfranchise a member of a corporation, and the power to remove an employe of a city board, and it might be argued that, in the former case, a suspension is, as the court

said, a temporary disfranchisement, and an act of the same nature as an expulsion, and that the power to expel in such a case would include a temporary exercise thereof by a suspension. However that may be, the court seems to have placed its decision upon the ground that the suspension was within the power of the corporation because it only accomplished a temporary deprivation of the rights of a member when the corporation had the power to make such deprivation permanent by an expulsion.

On the other hand, in *State* v. *Jersey City* (1 Dutcher, 536) the effect of the resolution passed by the common council was held by the court to work a suspension of the member if it had been valid.  The council had power to expel for cause. It had once expelled the member for bribery and he had been re-elected, and the council then adopted the resolution which the court said was a virtual suspension.  It was held that the council had no power to again even expel the member for the offense for which he had been once expelled and subsequent to which he had been re-elected; and, as to suspension, the court said the charter vested no such power in the council, and that it would have been extraordinary if it did; that the power was to expel, not to suspend, because expulsion left the office vacant so that it could be supplied by a new election, while suspension from duties created no vacancy and left the constituency of the member unrepresented.

The case shows that there is nothing in the nature of the power to remove or expel which necessarily and in all cases would include a power to suspend, for, in some instances, of which the above case is a good example, the power to suspend would seem to be very different in its nature from the power to remove, and not necessarily a minor power included in the power of expulsion.  The rights of a constituency might be affected most deeply by the exercise of the power to suspend, and yet would be, in truth, untouched by the expulsion of an unworthy representative.  Whether the power to remove includes the power to suspend, must, as it seems to us, depend, among other things, upon the question whether the suspension

in the particular case would be an exercise of a power of the same inherent nature as that of removal, and only a minor exercise of such power, or whether it would work such different results that no inference of its existence should be indulged in, based only upon the grant of the specific power to remove. We think it is apparent that the two powers cannot always be properly respectively described as the greater and the less, and, consequently, it cannot always be determined, simply upon that ground, that the suspension is valid because there was a power to remove. The power to remove is the power to cause a vacancy in the position held by the person removed, which may be filled at once, and if the duties are such as to demand it, it should be thus filled. The power to suspend causes no vacancy and gives no occasion for the exercise of the power to fill one. The result is that there may be an office, an officer and no vacancy, and yet none to discharge the duties of the office. By suspension the officer is prevented from discharging any duties, and yet there is no power to appoint anyone else to the office because there is no vacancy. If it be claimed that the power to suspend also includes the power to fill the place of the officer suspended during such suspension, then there is a second presumed power which flows from the simple power to remove. There is the power to suspend and there is the further power to be implied from it, viz., the power to fill the office with another during such suspension, although there is no vacancy in the office.

We do not think either of these last-named powers should be implied in the mere grant of the power to remove. We are not inclined to go so far with the doctrine of implied grants of power, because we think the implication is not one which naturally or necessarily arises out of the nature of the main power granted, and its denial in such cases as this can, as we think, work no possible mischief. We do not go to the extent of saying that in no conceivable case can the power to suspend be inferred from a grant of the power to remove. There may be cases where such an inference, arising from the general scope and nature of the act granting the power,

would be so strong as to compel recognition. We think there is no such inference to be drawn in the case before us.

The plaintiff held the position of excise inspector, and it was his business, as he described it, " to go 'round to different places where liquor was sold and see if the sellers were licensed, and if they were not, that they should get one; also to see that the sale of intoxicating liquors in the city of New York was carried on properly." These duties were, necessarily, to be discharged out of the sight of the commissioners. Upon the fidelity and prudence with which such duties were discharged depended, in great part, the proper enforcement of the law. The commissioners might believe that the inspector was not doing his duty, and yet be unable to show exactly wherein he failed. Proof thereof on charges, to be regularly preferred, would amount almost to a denial of the power to remove, because, the duties being of such a nature as above described and to be performed beyond the view of the commissioners, the inference of a failure to perform them might be based upon such a number of disconnected facts that it would not be regarded as justified upon a regular trial. Hence the necessity of a power to remove when the commissioners might feel there had been a dereliction of duty without being able to point out any specific fact as evidence thereof, while the power of indefinite suspension, without pay, would not add anything to the security of the city or the power of the commissioners to obtain honest service. If the employe were unfit, it would be the duty of the commissioners to remove him at once. If not unfit, he should not be suspended indefinitely, without pay.

It seems to us that the power of removal in such a case as this was intrusted to the commissioners to be exercised, if at all, at once and finally. It was not meant that they should have power to arbitrarily suspend without pay, and then appoint some other in the place of the suspended man, and perhaps suspend or remove the alternate and again appoint some other. The tendency would be to confuse instead of perfecting the service. The effect upon the suspended man would also be

demoralizing, causing him to expend his time in efforts to get reinstated rather than in endeavors to procure a livelihood in other ways, which would be the result of a removal. As the existence of the power to suspend depends upon our inferring it from the grant of the power to remove, all of the views above suggested may properly be regarded as bearing upon the question whether there is any inherent necessity for an inference of such a nature. The Constitution of our state, in section 3 of article 5, in providing for the appointment of a superintendent of public works, says that, " he may be suspended or removed from office by the governor, whenever," etc. In section 4 of the same article provision is made for the appointment of a superintendent of state prisons, and it is stated that " the governor may remove the superintendent for cause at any time," etc. Has the governor power to suspend in both cases? This difference of language in the organic law rather tends to the idea that the framers of these two provisions were not entirely sure that the power to remove included the power to suspend, or that the latter power was always of the same nature and only less in extent than the former.

We think the commissioners had no power to suspend the plaintiff, and that the frequent attendance of the plaintiff at the office of the board, and his continuous offers to discharge the duties of the position to which he had been appointed, were sufficient tenders of performance on his part to warrant the conclusion of the learned trial judge in directing the verdict.

We see no errors in the record, and the judgment should be affirmed, with costs.

All concur, except RUGER, Ch. J., not voting

Judgment affirmed.