(11 Misc. Rep. 304.)

### FOX v. MAYOR, ETC., OF CITY OF NEW YORK.

(Common Pleas of New York City and County, General Term. February 4, 1895.)

OFFICE AND OFFICER—SUSPENSION OR DISCHARGE.

 Whether the term "suspend," as applied to an inspector of masonry in New York City, who is entitled to pay only for the time he is actually employed in the performance of his duties, is equivalent to "discharge," is a question for the jury. Gregory v. Mayor, etc. (N. Y. App.) 21 N. E. 119, distinguished.

Appeal from trial term.

Action by Edward Fox against the mayor, etc., of the city of New York, to recover $3,145.78, with interest, for services as an inspector of masonry. From a judgment entered on the verdict in favor of plaintiff for $121, and from an order denying a motion for a new trial, plaintiff appeals. Affirmed.

Argued before BOOKSTAVER, BISCHOFF, and GIEGERICH, JJ.

Louis O. Van Doren, for appellant.

William H. Clark and James T. Malone, for respondent.

BOOKSTAVER, J. This action was brought by the plaintiff to recover $3,145.78, with interest thereon from the 18th day of December, 1889, for services alleged to have been performed by him as an inspector of masonry on the new aqueduct. From the record it appears that on the 27th of October, 1886, the plaintiff was appointed an inspector of masonry to act under orders of the chief engineer and his assistants on the line of the new aqueduct, and was assigned to duty on the 30th October, 1886. That the aqueduct commissioners on the 21st July, 1886, by a resolution, provided for a committee of construction, consisting of five commissioners, which should be an executive committee of the aqueduct commissioners, with full power of direction and supervision over the work of construction, and over the engineers, officers, and employés engaged therein. On the 23d

of November, 1886, that committee passed the following instruction and rule for inspectors of masonry, brick, and other work in the employ of the commission:

"Sec. 5. Inspectors are employed and paid by the month, and their whole time must be devoted to their duties."

And on the 6th of January, 1888, the aqueduct commissioners adopted a resolution as follows:

"That on and after January 1, 1888, all inspectors that are employed by the aqueduct commissioners are only to be paid for the time they are on duty on the work."

Under this employment and these rules the plaintiff performed the work from the 30th of October, 1886, until March 10, 1887, when, by an order of the chief engineer, he was suspended, and his pay stopped. On the 21st of the month last mentioned, plaintiff was reinstated and restored to work, which he continued until the 16th of June, 1887, when the chief engineer again suspended him from duty, and requested him to resign from further employment, and notified him that, in case he failed to do so, his discharge would be recommended to the commissioners. On the 14th of September, in the same year, he was reinstated, and resumed work; but the record shows that he performed no services from March 9th to March 21st, and from June 15th to September 14th, and received no pay for that time. After September he did perform services and received pay until the 3d of February, 1888, when he was required to appear before his division engineer, who thereupon said to him, "I suspend you"; and after this date he was never restored to duty, nor did he do any work as an aqueduct inspector. Meanwhile, and on January 8, 1888, he was notified by the chief engineer that at a meeting of the committee on construction of the aqueduct, held January 4, 1888, the following resolution was adopted, and was promulgated for his instruction and guidance, as well as others:

"Resolved, that on and after January 1, 1888, all inspectors employed by the aqueduct commissioners are only to be paid for the time they are on duty on the work; and in case any inspector, after once having been suspended or transferred for inefficiency or improper conduct, should again be complained of by the division engineer in charge, said division engineer shall give him his time, and report the name of such inspector for discharge by the commissioners."

When the evidence was all in, the plaintiff moved for the direction of a verdict for the full amount of $3,387.78, which was denied, and an exception taken, and the court left it to the jury to decide whether the plaintiff had been discharged or not, and the jury found a verdict for the plaintiff for $121, being his salary for one month. From the judgment entered on this verdict this appeal is taken.

On behalf of the plaintiff it is strongly urged that Gregory v. Mayor, etc., 113 N. Y. 416, 21 N. E. 119, and Emmitt v. City of New York, 128 N. Y. 117, 28 N. E. 19, are decisive of this question, and entitle the plaintiff to a direction in his favor for the periods during which he claims he was suspended merely, and not discharged; defendant, on the other hand, insisting that the several suspensions were in effect discharges. But we think there is a clear distinction

between the case under consideration and the cases above cited. In Gregory v. Mayor the plaintiff was an excise inspector, who had been appointed to an office which was permanent in its character, at a per annum salary. He was suspended, and not discharged, and the court, in substance, held that while he had the undisputed title to the office he was entitled to the salary. The whole reasoning in that case seems to us to be predicated upon the fact that the plaintiff held title to an office permanent in character, and which was a part of the system of the local government provided for by the charter, and hence it was impossible to suspend a public officer without vacating the office. In the Emmitt Case it was held that there was in fact no such thing as suspending a public officer without discharging him, and that unless the employé is discharged his pay goes on; and that, while the term of office was at the pleasure of the commissioners, they could not effect, arbitrarily, temporary or indefinite suspension without pay. But in that case it was further held that it was competent for the commissioners to enter into an agreement with the plaintiff in relation to his salary. In that case, also, the fact was apparent, from the conduct and actions of the plaintiff and defendants, that the relation of employer and employé existed, and had not been interrupted by the suspension. In this case it was expressly left to the jury to determine whether or not what was designated in the notices as a "suspension" was in reality a suspension or a discharge, and what the understanding of the parties was at the time; and, the jury having determined upon sufficient evidence that the notice was in reality a discharge, it is conclusive upon the plaintiff. But, even if the case last commented on was analogous to the one at bar,—which we think we have now shown is not the fact,—the full force of that decision has been modified by the opinions delivered in Lethbridge v. City of New York, 133 N. Y. 232, 30 N. E. 975, and Wardlaw v. City of New York, 137 N. Y. 194, 33 N. E. 140. In the first of these cases the court of appeals says:

"Whether this notice [a letter addressed by the commissioners to the plaintiff stating, "You are hereby suspended from the position of clerk from this date"] was called a suspension or a dismissal, is of very little consequence. It operated to terminate the plaintiff's employment and right to salary from that date."

In the case last cited, where two letters were written at an interval of about two years, the one using the word "suspended" and the other "discharge," the court says:

"It does not follow that because the commissioner in his first letter used the term 'suspended,' instead of 'discharge,' that he did not intend to terminate the employment as assistant engineer, and to create a vacancy; * * * nor does it follow that Wardlaw did not understand from this communication that his services were no longer required as an assistant engineer. The commissioner had the power to dismiss or discharge, and no particular form of words was necessary in order to accomplish that result. If he intended to and did communicate to the employé the fact that his services in that capacity were no longer required, and this was so understood by both parties, then the discharge was effected as completely as if the word had been used."

On this point, see, also, Kelly v. City of New York, 70 Hun, 208, 24 N. Y. Supp. 1. These decisions fully warranted the learned judge

at trial term in submitting the question of the understanding of the parties as to whether the notices operated as a suspension merely, or a discharge, to the jury for their determination, and also justified him in refusing to grant a new trial or vacate the verdict.

The fact that the jury found a verdict for one month's salary in favor of the plaintiff in no way affects this question. They may have found that the first did not operate as a suspension, and gave him his salary for the period when he was merely suspended. The verdict clearly establishes the fact that the last notice was understood, both by the plaintiff and the defendant, as a discharge, and not a suspension. If the jury found their verdict for $121 on any other theory than the one above suggested, the defendant, and not the plaintiff, was injured thereby.

The notices of suspension of March 10, 1887, and June 16, 1887, were properly admitted in evidence over plaintiff's objection, as bearing directly upon the question as to whether or not the plaintiff was discharged and had had notice thereof.

The exception to the admission of a copy of the resolution of the committee on construction, sent to the plaintiff, was not well taken. The board was created under the provisions of chapter 490, Laws 1883, and one cannot read that act without being struck with its independent features, and the evident design on the part of the legislature to repose in the aqueduct commissioners an unlimited and unqualified judgment and discretion in the hiring of employés and the selection of detailed employments to enable them to carry out the provisions of the act. When dealing with the question of employés, section 40 goes so far as to provide that no person coming with the requisite certificate from the civil service shall be appointed inspector or superintendent, unless his qualifications shall be in addition certified by at least three of the aqueduct commissioners. It cannot be seriously argued that the board created by that act had no power to pass the resolutions and by-laws they did. There is no restriction or limitation upon the board in that respect, and it would necessarily follow that the board had power to adopt reasonable by-laws to govern the business to be conducted; and it seems to us that the by-laws and resolutions passed by the board, and offered in evidence, were eminently reasonable and wholesome. The judgment should therefore be affirmed, with costs. All concur.