# SUPERIOR COURT OF BALTIMORE CITY.

Filed November 3, 1910.

ROGER W. CULL ET AL.
VS.
JOHN B. A. WHELTLE ET AL.

*Isaac Lobe Straus, Attorney-General; Hon. Isidor Rayner* and *Randolph Barton* for the petitioners.

*Messrs. William Shepard Bryan, Edgar H. Gans, J. Southgate Lemmon* and *Joseph R. Gunther* for respondents.

HARLAN, J.—

The question which lies at the root of this controversy is whether the Governor of Maryland, under the Constitution and Laws of the State, has the authority to temporarily suspend the members of the Board of Police Commissioners of Baltimore City, pending the hearing and determination of charges against them of alleged incompetency and misconduct, and to appoint in their places other persons to discharge ad interim the duties of said Board. The Governor's right to appoint the ad interim Board cannot exist unless he has the power to temporarily suspend the Board in office, and it, therefore, becomes necessary at the outset to address myself to the first branch of the inquiry. The sole right claimed for the Governor is the limited right of temporary suspension pending the hearing and determination of the charges preferred against the members of the Board. A Board of Police Commissioners for Baltimore City was created by the Act of 1860, Chapter 7. The first Board consisted of four Commissioners, appointed by the legislature together with the Mayor of the city ex officio. The term of office of the appointed Commissioners was four years. Their successors were to be appointed by the General Assembly on joint ballot, vacancies happening during the recess of the legislature to be filled by the remaining Commissioners until the next regular session of the legislature, and "for official misconduct any of said Commissioners could be removed by a concurrent vote of the two Houses of the General Assembly." In 1862 (Act 1862, Chapter 131), the Board was reduced to three, two of whom were elected by the General Assembly on joint ballot (their successors were to be likewise elected), while the Mayor ex officio was the third member. Vacancies were to be filled during the recess of the legislature by the Governor, and for official misconduct any of said Commissioners could be removed by a concurrent vote of the two Branches of the General Assembly, or by the Governor during the recess thereof.

In 1867 (Act of 1867, Chapter 367), the number of Commissioners was retained at three, but the Mayor was to be no longer an ex officio member of the Board; the three Commissioners were to be elected by the two Houses of the General Assembly for four year terms, their successors to be likewise elected, vacancies during the recess of the General Assembly to be filled by the Governor until the next session of the General Assembly, and "for any official misconduct on the part of said Commissioners, the General Assembly, if in session, had the power of removal, and during the recess of the same, the Governor could remove any of said Commissioners on conviction for any felony before a court of law," and appoint a successor until the next meeting of the General Assembly.

In 1874 (Act 1874, Chapter 2), a change was made in the term of office of the Commissioners, but they still continued to be elected by the General Assembly, and the provisions of the Act of 1867, with reference to vacancies and the power of removal were not changed.

In 1900 (Act 1900, Chapter 15), the power to appoint the Police Commissioners was for the first time given to the Governor with the advice and consent of the Senate, and it was provided that "any of said Commissioners shall be subject *to removal* by the Governor for official misconduct or incompetency in the manner provided by law in the case of other civil officers."

From this review of the legislation it appears that from 1860 to 1862 the Governor had no power of appointment or removal over the Police Commissioners. From 1862 to 1867 the Governor had power to appoint to vacancies during the recess of the Legislature and power likewise during the recess of the Legislature to remove for official misconduct. From 1867 to 1900 his power of appointment was confined to filling vacancies during the recess of the legislature and his power of removal was confined as to time to the recess of the legislature and as to cause only to conviction of a felony in a court of law. From 1900 to the present the power of the Governor to appoint with the advice and consent of the Senate has been complete, and he has had the right of removal for official misconduct or incompetency *in the manner provided by law in the case of other civil officers.*

It is not claimed that there is any provision of the Constitution or any general statute, which, undertaking to regulate the manner of proceeding in the removal of civil officers for alleged misconduct, expressly gives the right to suspend the official charged pending the hearing and determination of such charges. The claim is that the right to exercise this limited power of temporary suspension is so salutary, so beneficial, so conducive to the protection of the public against delinquent and corrupt officeholders that it must be implied as a necessary incident of the power to remove for cause.

A power claimed may be both salutary, beneficial, and for the protection of the public and yet not have been granted to the person who seeks to exercise it or indeed not granted to any person under existing law.

I suppose that it could not be pretended by anyone that from 1860 to 1862, when the Governor had no power of removal over the Police Commissioners and they were removable only by the General Assembly, that the Governor would have had power to suspend a Police Commissioner until the meeting of the General Assembly although indicted for crime.

The real question is whether the law-making power has provided for the case. No doubt the argument ab inconvenienti in the absence of the power is entitled to weight but if in one state of case the absence of the power claimed be considered inconvenient and in another state of case the possession of the power might be considered dangerous or liable to abuse we may hesitate to imply its existence. When a power is conceded to exist, it is proper to presume in an Executive the motive to perform his duty in the most conscientious manner, but when the question is as to the existence of the power, while we may not regard the motives of the person who claims the power we may well consider the motives that might actuate an unworthy, an ambitious or an unpatriotic person in a determination of whether that which is liable and open to abuse was intended to be given without restraint. If, for example, it be conceded that in the case made by the papers before me nothing appears but what is consonant

with the fullest regard for the public welfare and the performance of official duty, a case may be supposed when a general election was impending, involving the control of the legislature and the filling of the State offices, and that a less scrupulous and less faithful public servant than the present executive occupied the Governor's chair, and that the latter not having the power to remove except for cause but wanting to get rid of a faithful Board of Police Commissioners until after the election, and to put the police at the time of the election under the control of a subservient board of his own choice, would prefer charges against them, set these charges for trial after the election, and meantime suspend the acting board and appoint an ad interim board. The possibility of such a consequence might well, in balancing the evils or benefits of giving to or withholding such a power from an executive, have occasioned its being withheld; and might well cause a court to hesitate to imply its existence on the ground that it was always a necessary and salutary power. If an incidental power be necessary or desirable in some instances, and not only unnecessary, but dangerous in others, we have a situation where wisdom suggests that the exercise of the power should be surrounded by such restraints and safeguards as would insure its being confined to the former, and if there is somebody charged with the duty of providing these restraints and safeguards, we may well await its action before implying the power in any case where it is not indispensably necessary. It is difficult to perceive how the power to suspend temporarily, pending charges, is indispensably necessary to the exercise of the power to remove in the present case. The Commissioners are not charged with felony, nor any serious misdemeanor. They are not charged with wilful misconduct, or corruption, or conspiracy, nor with any act which, if not immediately prevented, will result in great public mischief. The Governor controls the proceedings, fixes the time for trial, and can, within the limits required for a fair and impartial trial, bring the matter to a speedy conclusion. Nor can we lose sight of the fact that the power is claimed in a case where the Governor is actor and judex, for the Attorney-General, with the frankness and candor for which he is distinguished, has stated at bar that while the charges are preferred in his name as Attorney-General, they are preferred at the instance of the Governor, and are in reality the Governor's charges.

It is said that there is no case in which the power of *limited suspension pending the hearing of charges* has not been held to be included in a power to remove for cause. The precise question raised here has not been adjudicated. That question may be thus stated: Given a limited power of removal for cause, as for official incompetency or misconduct, does this carry with it as a necessary incident all implied power to suspend pending the hearing and determination of the charges in a case where the official entrusted with the power to remove, and to judge of the existence of the cause therefor may himself make the charges of misconduct? All the cases where the right of suspension has been recognized as included in the unlimited power to remove, that is, the power to remove at discretion without assigning cause, are clearly distinguishable. The cases too are not in point (and there are a number of these) where statutes and ordinances conferring the power to suspend officials temporarily, pending the hearing and determination of charges, have been sustained as a valid exercise of legislative power in the reasonable regulation of the authority to remove. These statutes show a due regard for private rights and careful safeguards against arbitrary action. Allen vs. State, 32 Ark. 241; State vs. Peterson, 50 Minn. 239; Poe vs. State, 72 Texas 638; Griner vs. Thomas, 101 Texas 38; State vs. Lingo, 26 Mo. 496; Westburg vs. City of Kansas, 64 Mo. 504; Blackwell vs. Trayer, 101 Md. 661; Sumpter vs. State, 81 Ark. 60. There are but four cases cited where the power of suspension pending the hearing and determination of charges has been sustained as an incident of the power to remove on conviction of charges. These will be noted:

1st. State vs. Megarden, 85 Minn. 41.

By the statutes of Minnesota, the Governor had authority to remove a sheriff from office whenever it appeared to him by competent evidence that, * * * such officer has been guilty of malfeasance or nonfeasance in the performance of his official duties, first giving such officer a copy of the charges and

an opportunity to be heard in his defense. A public examiner who had made an examination of the sheriff's office reported to the Governor that the sheriff had made improper charges against the county in excess of legal right, and had collected the same on verified claims presented to the Board of County Commissioners. The examiner instituted a charge based upon his inquiry against the sheriff, and the Governor, acting upon the complaint of the examiner, caused a notice of the charge to be given to the sheriff, appointed a commission, as provided by the stautes, to take and report the testimony at a time fixed, and also made an order suspending the sheriff during the proceedings for removal. The propriety of this order, under the circumstances stated, was sustained by the court, in the absence of any statute expressly authorizing it, on the ground that the power to so suspend impliedly exists as incidental to the executive authority to remove. This case undoubtedly contains the strongest statement of the doctrine for which the petitioners here contend, and yet, strong as the statement is, it seems to me the reasons suggested for the necessary implication of the power are not wholly convincing, and the case differs from the case at bar in the pertinent fact that the charges of which the Governor was to judge did not originate with the Governor, but with an officer whose duty it was to conduct the investigation on which they were based.

2nd. State vs. Police Commissioners, 16 Mo. appls. 48.

In this case it was held that the suspension from office of an officer by the tribunal before whom he is to be tried, pending his trial in due form upon charges, a conviction of which would involve his dismissal from office, is not an arbitrary or improper exercise of authority, the court saying that such suspension of an officer "so as to tie his hands for the time being seems to be universally accepted as a fair, salutary and of necessary incident of the situation."

3rd. Fields vs. Tennessee, Mart & Y. (Tenn.) 168.

Here the main question was whether the county court had power to pass a judgment of removal against a constable who had been convicted of extortion. Resort was had to the common law, there being no statute. A judgment of fine and removal having been given, the constable appealed, and pending the prosecution of the appeal, the county court passed an order suspending him from the exercise of the duties of the office until the case should be finally determined by the court above. The action of the lower court was sustained, the court simply saying as to the order of suspension: "The court having had power to remove, had power to suspend, which as certainly follows as that the whole includes all the parts." It will be noted that the suspension was after the judgment of conviction below.

4th. Maben vs. Rosser, 103 Pac. Rprtr. 674 (Okla.).

Under a constitutional provision that all elective officers not liable to impeachment shall be subject to removal from office in such manner and for such causes as may be provided by law, proceedings, in accordance with statutes providing therefor, were taken against a District Judge to secure his removal from office for official misconduct. The Attorney-General made application to the acting judge of the court in which the indictment was found for an order to suspend the plaintiff until the final hearing upon the accusation, returned by the Grand Jury. Plaintiff appeared and filed his denial to the accusation returned by the Grand Jury and to the application for suspension on the ground that the court was without jurisdiction to hear and determine a case to remove a Judge of the District Court, and the acting judge was about to make an order suspending the plaintiff, but before doing so, gave him an opportunity to present his petition to the court for an order of prohibition. No express statutory provision authorizing the suspension of the accused existed, and the court said that if the District Court in the case at bar had the power to suspend the final hearing of the case pending before it, it must have such power by virtue of the same being included in the power to remove for cause.

The court examined the authorities and concluded that the two sides of the question are about equally supported by authority, but felt constrained to adopt and follow the rule which appeared to them to be more conducive to the administration of justice and the

protection of the public against delinquent and corrupt officeholders, and to hold that the power to remove for cause after hearing includes the power to suspend temporarily pending such hearing.

All of these cases with the possible exception of 16 Mo. App. 48, lack the element of the same person acting as prosecutor and judge, and all of them justify the implication of power to suspend pending final determination of charges upon reason of expediency and propriety rather than necessity. It has been well said, "as a rule the implication of a power is in proportion to the necessity of having it in order to discharge the duty imposed. If it is an indispensable power the implication is necessary and therefore irresistible." (43 Md. 572.)

I agree with Judge Peckham in Gregory against Mayor, 113 N. Y. 416, that there is nothing in the power to remove which necessarily and in all cases makes it include the power to suspend. The author of the article in the American and English Encyclopedia of Law (2 Ed.) 451, declares that the authorities bearing upon the power to suspend pending investigation of charges, which on conviction would work dismissal, as an incident of the power to remove are "meagre and unsatisfactory;" and when we turn to our own reports we find no direct adjudication, but we do find the attitude of the Court of Appeals distinctly declared towards the doctrine of implying power in the Executive, on the ground that where a particular power is given "all the ordinary appropriate means to execute it are to be deemed a part of the power itself." Groom vs. Gwinn, 43 Md. 572.

Before taking up this case for further examination it is well to repeat the terms in which the grant of power to the Governor to remove the Board of Police Commissioners of Baltimore City is granted. These are: "Any of said Commissioners shall be subject to removal by the Governor for official misconduct or incompetency *in the manner* provided by law in the case of other civil officers" (italics are mine). This must have reference to the general provisions of the written law of the State, constitutional or statute.

The executive power of removal is limited by the following constitutional provision, "The Governor may suspend or arrest any military officer of the State for disobedience of orders or other military offense; and may remove him in pursuance of the sentence of a Court Martial; and may remove for incompetency or misconduct all civil officers who received appointment from the executive for a term of years." Const. Art. 2, Sec. 15. The only general law providing *for the manner* of removing civil officers is contained in the following sections of Article 41, of the Code:

Sec. 12. "Upon complaint made against any civil or military officer who can be removed or suspended by the Governor, the Governor may summon before him any witnesses to testify for or against such complaint, and may allow such witnesses one dollar a day for their attendance, and itinerant charges, and may enforce the attendance of such witnesses in the same manner as the courts may."

Sec. 13. "Upon complaints made under the preceding section, the party complained against shall have a copy of the complaint and notice of time when the Governor will inquire into and examine the same."

Sec. 14. "The cost arising upon any such complaint the Governor may order to be paid either by the party making the complaint, the party complained against, or the State; and if ordered to be paid by either of the parties, the Governor may enforce the payment in the same manner and by the same means as the Circuit Courts may enforce their orders; and if ordered to be paid by the State, the Comptroller shall issue his warrant to the Treasurer to pay the same."

The first thing to be noted about the constitutional provision is that the power of *suspension* is expressly given with reference to military officers, and no such power is *expressly* given with reference to civil officers. It seems to me also that the clause with reference to removals is not so much a grant of, as a limitation upon, executive power. Up to the time of the adoption of this Constitution of 1851, the Governors of Maryland under the Constitution of 1776, had enjoyed a power of removal over many civil officers that did not depend upon cause. This power thereafter was to be taken away and the executive power of removal confined to a removal for the specified causes, "in-

competency or misconduct of such civil officers as received appointment from the executive for a term of years." The incompetency and misconduct here meant are clearly not anything which the Governor may see fit to designate as incompetency and misconduct, for this would leave the right to remove arbitrary, unlimited and undefined. "It is the utmost stretch of arbitrary power and a despotic denial of justice to strip an incumbent of his public office and deprive him of its emoluments and income before its prescribed term has elapsed except for legal cause, alleged and proved upon an impartial investigation after due notice." McSherry, J., in 80 Md. 366.

It must be conceded that in Maryland the power of appointment is not exclusively an executive power, and that the power to remove is not a necessary incident of the power to appoint (such as is enjoyed by the President of the United States), but is limited by the constitutional provision heretofore quoted. It may be admitted that where the legislature creates a civil office and vests the power of appointment in the office in the Executive for a term of years, that this would bring the office and the incumbent under the constitutional provision, and if the constitutional power to remove for cause carried with it by implication, and without legislation regulating the same, the power to suspend pending an investigation of charges, the incumbent would take the office subject thereto. I am not aware of any instance where any Governor of the State, since the Constitution of 1851 was adopted, has claimed this power, nor of any contemporaneous construction justifying it. There is nothing in the 12th, 13th and 14th Sections of Article 41 of the Code, above quoted, passed to make the Governor's power of removal effective, which would indicate that it was intended to be possessed. What is the attitude of our Court of Appeals towards applying powers in the Executive which can be conferred by legislative action under Article 3, Section 45 of the Constitution, which reads: "The General Assembly shall pass all such laws as may be deemed necessary and proper for carrying into execution the powers vested by this Constitution in any department or office of the Government and the duties imposed upon them thereby?"

This requires me to revert to the case of Groom vs. Gwinn, 43 Md. 572. This notable case involved the settlement of a contest between Mr. Wallis and Mr. Gwinn for the office of Attorney-General, growing out of the election of 1875. The returns certified to the Governor by the proper officers showed that Mr. Gwinn had received a majority of the votes cast for Attorney-General. Mr. Wallis, outside of Baltimore, had received a majority of the votes, and he claimed that the election in Baltimore was rendered wholly by fraud, intimidation and violence, and that the returns from Baltimore could not lawfully be counted. The Constitution, Article 5, Section 2, provides that "All elections for Attorney-General shall be certified to, and the returns thereof made * * * to the Governor, whose *duty* it shall be to decide on the election and qualification of the person returned, and in case of a tie between two or more persons to designate which of said persons shall qualify as Attorney-General, and to administer the oath to the person elected." Mr. Wallis gave notice of his intention to contest the election before the Governor, and the question most discussed was whether the Governor had power in the absence of legislation authorizing him to summon witnesses; administer oaths and hear testimony, to determine the contest. No stronger argument could be made than was made in the brief filed in this case by Mr. Hagner, Mr. Morrison and Mr. Wallis, insisting that when the duty to decide the election was expressly imposed upon the Governor all the powers indispensably necessary to enable him to perform this duty were implied. The answer to this argument by the Appellate Court was as follows:

"It has been argued that these powers are conferred upon the Governor by implication upon the ground that 'where a general power is conferred every particular power necessary for its exercise will be implied.' We are not willing to adopt this rule in the broad and unlimited terms in which it has been stated; nor is it in any sense applicable to the present case. The effect of such a construction would be to leave the rights of the appellee, and of the contestant, to be determined by the arbitrary discretion of the Governor. No court of justice is warranted in assuming that the Constitution intended that the rights of

parties can be taken away or decided by a form of trial, for which the law of the land has made no provision.

But it is clear from the terms of the Constitution that no such powers were intended to be vested in the Governor by implication. By Art. 3, Sec. 56, it is provided that "the General Assembly shall have power to pass all such laws as may be necessary and proper *for carrying into execution the powers vested by this Constitution in any department or office of the Government, and the duties imposed on them thereby.*"

It is clear from this provision, that the framers of the Constitution intended, that the means to enable the Governor to execute the general power conferred on him by Article 5, Section 2, should be furnished and prescribed by law; without such legislation the general power can have no operative effect. Many examples might be given to show the necessity for such legislation. A single one will suffice. By Article 2, Section 15, the power is conferred upon the Governor to "remove for incompetency, or misconduct, all civil officers who received appointment from the Executive for a term of years."

In order to render this power effective, laws have been enacted by the legislature (Code, Article 42, Sections 13-15), prescribing the mode of proceeding in such case, and conferring upon the Governor the power "to summon witnesses to testify for or against the complaint, and to enforce the attendance of such witnesses in the same manner as the courts may," etc.

Without this legislation these powers did not belong to the Governor and could not be exercised by him. It has been argued that the general power of removal for cause, conferred on the Governor by the Constitution, might be exercised by him without the aid of these statutes, but the power thus exercised would be arbitrary, and contrary to the spirit and intent of the Constitution.

Our own Court of Appeals has here said in effect, with reference to the Governor's power of removal, that whatever powers were necessary and proper for carrying it into execution were to be provided by the General Assembly in pursuance of the duty imposed upon it by Article 3, Section 56

of the Constitution, and where they have not been provided, they do not exist; and so I am constrained to conclude that inasmuch as the legislature, in providing for "the manner in which" civil officers generally are to be removed, has not deemed it wise, up on the present time, to provide for a temporary suspension pending the hearing of the charges; that this is a power which does not exist in the Governor with reference to the Board of Police Commissioners of Baltimore City, and that he had no lawful authority to remove them from office and appoint an ad interim Board in their places. Our statutes contain a number of instances where, when the legislature did intend the power of suspension to exist, it has been specifically granted.

This conclusion disposes of the case and I have not felt it necessary to decide the other important questions which were presented at the hearing and argued with so much ability and force by the respective counsel. Indeed, I cannot forbear to express my obligation to them for the exhaustive and thorough manner in which the case has been presented. Everything which could aid me in reaching a right judgment has been collected with the most painstaking labor. I recognize the strength of the arguments advanced by the learned counsel of the petitioners, and I have examined with care all the authorities cited on this branch of the case, but I have felt compelled to adhere to the law of Maryland, as I believe it has been declared by our highest tribunal. I am prepared to sign an order overruling the demurrer to the answer of the respondents and refusing the mandamus asked for by the petitioners.