(92 Misc. Rep. 409)

PEOPLE ex rel. JONES v. SAXE et al., State Tax Commission.

(Supreme Court, Special Term, Schoharie County. November, 1915.)

MANDAMUS ☞77—MORTGAGE TAX APPRAISER—REMOVAL—CIVIL SERVICE—SPANISH WAR VETERAN.

    Under Civil Service Law (Consol. Laws, c. 7) § 21, providing that a reduction of the compensation of any honorably discharged soldier, when intended to bring about his resignation, shall give him a remedy by mandamus for righting the wrong, relator, in mandamus against the state board of tax commissioners, was entitled to a writ compelling them to restore his salary to $1,800 for the period during which he was out of the position of mortgage tax examiner in the civil service, or to reinstate him, where it appeared that he was a veteran of the Spanish War, and was appointed such examiner, in which position he served until the tax commissioners reduced his salary from $1,800 to $900 a year, in consequence of which he quit the position and remained out of same for several months and until he was reinstated, and it further appeared, in view of the fact that no complaint was made of his work and that the salary of neither of two other tax examiners in the same office was reduced, that this action of the commissioners was intended to force him to quit his position.

    [Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 161–169; Dec. Dig. ☞77.]

Mandamus by the People, on the relation of Leland C. Jones, against Martin G. Saxe and others, constituting the State Tax Commission. Writ allowed.

C. E. Nichols, of Jefferson, for relator.

E. E. Woodbury, Atty. Gen., and E. G. Griffin, Deputy Atty. Gen., for respondents.

HASBROUCK, J. Leland C. Jones, a veteran of the Spanish War, was appointed to the civil service of the state December 6, 1910, and

served until July 31, 1914. From that time he was out of the service until May 24, 1915, when he was restored to his old position. He seeks a mandamus to reinstate him for the time he was out of the service and to pay him the salary of the office during that time and some disbursements. The position which he held was mortgage tax examiner. He was not actually removed from it, but about the 1st day of July his salary, which had theretofore been $1,800 a year, was reduced by the state board of tax commissioners to $900 a year. He treated the reduction as a removal and withdrew from the position. The board regarded his withdrawal as a resignation. There were two other mortgage tax examiners at that time in the office of the tax commissioners. The salary of neither of them was reduced.

No question was made of the qualification of the relator. When examined for his position, he "passed first on the list." As a witness on the trial he appeared thoroughly conversant with the duties of his position. No complaint appears ever to have been made against the manner in which he performed his duties. It appears, however, that there was some "reorganization" in the department, and that after it the board sent him a letter stating "that at a meeting of the board held on July 8, 1914, your salary as 'auditor' in this department was fixed at the rate of $900 per annum from July 15, 1914." The use of the word "auditor" in the communication was a mistake. See Minutes, page 16. In a letter to the tax commissioners on July 11, 1914, Jones sought to find out about the change in his salary and wrote:

"* * * I would thank you for a copy of the minutes of the meeting or meetings of your board which in any way show the proceedings of your board or which in any way affect the position held by me as mortgage tax examiner."

The board made no reply. Then Jones wrote and said:

"I am an honorably discharged veteran of the Spanish-American War. * * * I hereby protest against * * * attempting to fix my salary * * * at * * * $900. * * * I am ready and willing to perform any duties required of me by your honorable board as heretofore."

If there was any inefficiency in Jones' service, here was an invitation to the board to point it out. This it did not do.

The contention of the relator is that the state board of tax commissioners, in reducing his salary from $1,800 to $900, removed him from his position. There are no authorities that have been called to my attention that support this extreme claim. Speaking with regard to the reduction of the salary of a school teacher the Appellate Division of the Second Department said:

"As to the effect of the reduction of the relator, I concur in the opinion expressed by Mr. Justice Marean at Special Term, to the effect that reduction is really a removal from the position occupied, accompanied by appointment to a lower position." People ex rel. Callahan v. Board of Education, 78 App. Div. 505, 79 N. Y. Supp. 624, affirmed 174 N. Y. 169, 66 N. E. 674.

It is not contended that in the case at bar there was any change made in the position held by the relator. With regard to other public employés than veterans and volunteer firemen the rule is well established that the power "to fix a salary carries the power to reduce it." Mat-

ter of Rudd v. Cropsey, 159 App. Div. 275, 144 N. Y. Supp. 198; Sauerbrunn v. Board of Education, 150 App. Div. 407, 135 N. Y. Supp. 85.

If there were nothing in the case beside the mere fact of reduction of salary, the respondents would be entitled to judgment, for there is no difference in the reduction of the salary of an ordinary employé and a veteran, except that the veteran's may not be reduced with the purpose of bringing about his resignation. The facts hereinbefore stated we think warrant the inference at least that the reduction of the relator's salary was made for some purpose. It does not appear either that that purpose was economical or to relieve the state of the burden of an incompetent employé. We think the action of the tax commissioners in reducing the relator's compensation was arbitrary, and that its design was to bring about Jones' resignation or separation from his position. Jones, as a veteran of the Spanish War, enjoyed under the Civil Service Law certain privileges, preferences, and immunities as a public servant; particularly the immunity of not being forced out of the civil service by a reduction in his compensation against the terms of the statute, which provides:

"Sec. 21. A refusal to allow the preference provided for in, this and the next succeeding section to any honorably discharged soldier, * * * or a *reduction of his compensation intended to bring about his resignation shall* be deemed a misdemeanor, and such honorably discharged soldier * * * shall have a right of action therefor in any court of competent jurisdiction for damages, and also a remedy by mandamus for righting the wrong."

All that can be done in this proceeding is to determine the right of the applicant to his position during the time he was out of it. A mandamus may issue compelling the state board of tax commissioners to restore his salary for that period to $1,800 or reinstate him as he may be advised. Hilton v. Cram, 112 App. Div. 35, 97 N. Y. Supp. 1123.

Writ allowed. Fifty dollars costs, besides disbursements. Ordered accordingly.