In the Matter of LOUIS C. SEHULSTER, Petitioner, against STEPHEN J. CARNEY, as Commissioner of the Department of Water, Gas & Electricity of the City of New York, et al., Respondents.

Supreme Court, Trial Term, New York County, October 7, 1949.

*Charles Belous* for petitioner.

*John P. McGrath, Corporation Counsel (Michael Kilcommons* of counsel), for respondents.

CORCORAN, J.  On June 30, 1947, the City of New York assumed operation of the Flatbush plant of the New York Water Service Corporation (hereinafter referred to as the Corporation), a utility which supplied water to the residents of the Flatbush area in the borough of Brooklyn.  Shortly before that date arrangements were being made by the Corporation and the city for the transfer of employees of the Flatbush plant to the city, and to that end a proposed local law was introduced in the city council which became Local Law No. 62 for the year 1947, effective August 1, 1947.  It provided, in part, that " * * * all employees, except officers, of any water works company, the operation of which, in whole or in part, is assumed by the city, who were in the employ of such water works company at the time of such assumption by the city, shall be continued in the employment of the city in similar or corresponding positions in the department of water supply, gas and electricity and department of finance of such city ", and that " The positions so held by such employees shall be in the non-competitive class."

Continuity of employment under this local law as to persons who were employees of the Corporation at the Flatbush plant on the date of assumption of operation by the city was mandatory, except that the municipal civil service commission could exclude a person who was not of good character.  While this legislation was pending in the city council, the municipal civil service commission adopted a resolution substantially to the same effect.  It related to those employees which the city " elects " to continue in employment.  Such election under the local law which the resolution was to implement could only refer to an election based on the character of the employee.  Clearly, the commission could not, by resolution, make continuity of employment discretionary when such continuity was made mandatory by local law.

The petitioner was an employee of the corporation on the date of assumption of operations by the city. There has been no controversy regarding his good character. Despite the mandatory nature of the local law and the petitioner's apparent qualifications for city employment under it, the respondents have refused to assign him to work or to pay him. He brings this proceeding under article 78 of the Civil Practice Act, for an order to compel the respondents to employ and assign him as a clerk, grade 3 in the department of water supply, gas and electricity as of August 21, 1947, and for payment of his salary from that date.

Although Local Law No. 62 did not become effective until August 1, 1947, the city in anticipation of its enactment began to make arrangements for the transfer of employees prior to the assumption of operation of the Flatbush plant. On or about June 13, 1947, the commissioner of water supply, gas and electricity sent a mimeographed form letter to all the employees of the Corporation, including the petitioner. This letter explained the proposed local law which eventually became Local Law No. 62 and the resolution of the municipal civil service commission, and stated that each of the employees of the Corporation was eligible to enter city service in the noncompetitive class. Although neither the local law nor the resolution contained a deadline with respect to the time for accepting the offer of city employment, the commissioner in the letter asked the petitioner to signify his willingness to accept employment by June 18, 1947.

The petitioner did not specifically respond to the commissioner's request and the respondents contend that the petitioner was guilty of laches and that the relief which he requests should be denied on this ground. This claim is groundless. The court appreciates that in the transition of operations it was necessary to have the Corporation's employees act promptly in accepting city employment. Only by continuity of employment could the residents be assured of adequate and uninterrupted water service, a feature which is recognized in the finding in the local law and the recital clauses in the commission's resolution. A brief examination of the causes of the delay in the petitioner's case, however, demonstrates that he was not guilty of laches.

At about the time that the petitioner received the letter from the commissioner, he was requested to assist the Corporation in winding up the affairs of the Flatbush plant. The city officials acquiesced in his doing this work (as they did in the case of some other employees), and gave the petitioner a leave of

absence without pay from July 1, 1947, to August 31, 1947. This leave was recorded on a departmental form approved by the Brooklyn borough head of the department, which set forth as the reason: " To continue with the New York Water Service Corporation to complete work in accordance with agreement ". The petitioner was thereafter granted another leave of absence without pay until September 30, 1947, which was recorded on the same form. On August 21, 1947, the petitioner called at the Brooklyn office of the department. He advised the officials that his temporary work for the Corporation was completed and said that he was prepared to start to work for the city. The assistant to the commissioner had the petitioner execute an employment record, a fingerprint card, an acceptance of employment, and an oath of office. On the following day, the assistant sent a memorandum to the commissioner of what had transpired and added, " I might add that the modification of the budget does not provide for this particular man but we were told to have him fill out the necessary application, grant him a leave of absence for the months of July and August, and the necessary arrangements would be made ". The commissioner initialed this memorandum with the notation " O.K." The petitioner was told that he would be assigned to work shortly. He kept himself available for work and repeatedly requested an assignment, but none was ever made. On or about March 9, 1949, the petitioner's claim was formally rejected.

In my opinion, the petitioner was duly appointed on August 21, 1947, when the assistant to the commissioner had him execute the oath and acceptance of employment; and advised him that he would be assigned to work shortly. The commissioner himself approved of what his assistant had done. The commissioner knew that his assistant had had the petitioner take the oath and sign the acceptance of the offer of employment when he put " O.K." on the memorandum. The granting of several formal leaves of absence by the city is further evidence that the city officials treated the petitioner as an employee. With this record, it is difficult to follow the city's contention that the petitioner was guilty of laches.

The petitioner, however, is not entitled to receive salary retroactive to August 21, 1947. Section 23 of the Civil Service Law, on which the petitioner relies for retroactive salary, is predicated on reinstatement after a wrongful removal. The type of employment in this case where the city acquires ownership and control of a private enterprise, and seeks to achieve continuity of employ-

ment is unusual. It certainly is not within the purview of section 23. Ordinary principles are more applicable. The parties contemplated, from the very beginning that the petitioner would be assigned to work and that his salary would begin from the date of such assignment. The parties, at least for a time, treated the continuing nonemployment much as they did the prior formal leaves of absence without pay.

The award of back pay, moreover, would appear to violate the provisions of the State Constitution prohibiting gifts of public money or property (art. VIII, § 1; art. IX, § 10). • (See *Matter of Mullane* v. *McKenzie,* 269 N. Y. 369; *Matter of Rindone* v. *Marsh,* 183 Misc. 10.)

The Statute of Limitations is no bar to the proceeding, since the respondent did not take final action on the petitioner's repeated demands until March 9, 1949.

Settle order.