Bertram Harnett, J.
Can the Police Commissioner of Nassau County, without a prior hearing suspend a policeman without pay?
This central question of the instant article 78 CPLR proceeding invokes important questions of procedural due process, the balancing of public and private rights, and plain old-fashion statutory construction.
In the circumstances of this case, the court holds that the Nassau County Police Commissioner may suspend the policeman without a hearing, but he may not withhold his pay until after a hearing and determination.
Monroe Gould, a Nassau County policeman for 16 years, was arrested on July 28, 1969 charged with soliciting a bribe -■ while on radar enforcement duty six days earlier. Immediately following the arrest, the Police Commissioner suspended him without pay. Two days later, on July 30, 1969, Gould appeared before the Nassau County Grand Jury on the bribery charges. The Grand Jury dismissed all charges and refused to indict Gould. On August 13, 1969, some 16 days after his suspension, Gould was served with departmental charges and specifications by the Commissioner of Police. The Commissioner ordered Gould to appear before him on August 19,1969 for arraignment and the fixing of a trial date, giving him at that time the *974 opportunity to plead guilty or not guilty to the charges and specifications.
On August 8, 1969, Gould filed papers instituting these proceedings seeking immediate reinstatement as a policeman with all of his rights and privileges. Oral argument was held in open court on August 18, 1969, and the parties were given until August 20, 1969 to file memoranda. Pursuant to CPLR 1012, the Attorney-General of New York State was notified of apparent constitutional questions and given an opportunity to intervene. The court is advised that on August 26, 1969 the departmental trial was, in fact, held, and on September 9, 1969, Patrolman Gould was found guilty and dismissed from the Nassau County police force.
This proceeding relates only to Gould’s initial suspension on July 28,1969, which was prior to his departmental trial. Analytically, two separate subquestions appear here. First, could Gould have been suspended in the first place before his hearing? Secondly, could this have been without pay?
At one time in the history of our jurisprudence, the concept of due process was limited to conduct of the Federal Government (Communications Comm. v. WJR, 337 U. S. 265; Greene v. McElroy, 360 U. S. 474). As time went by, it became extended to State action (Willner v. Committee on Character, 373 U. S. 96). Procedural due process means the ways of asserting and conducting disciplinary, punishment, or economic deprivation charges and proceedings fairly and openly, with full opportunity for legal rights and remedies to be used by the party under attack (see Willner v. Committee on Character, supra; Matter of Gault, 387 U. S. 1). In modem times, the sense of requisite fair dealing in the invocation of proceedings has spread quite generally into the activities of public entities, and is manifested even in such frontier decisions as where a student in a public university was held to have a right to procedural due process in interim suspension from school before a full hearing (Stricklin v. Regents of Univ. of Wisc., 297 F. Supp. 416), Moreover, New York State itself has recognized the right of its employees to a certain process. Sections 75 and 76 of the Civil Service Law contain safeguard provisions and procedures under which civil service employees may be charged, suspended, disciplined or removed.
In dealing with this Nassau County occurrence, however, sections 75 and 76 of the Civil Service Law are not applicable. This is because Nassau County operates under a so-called home-rule charter system (County Government Law of Nassau County; otherwise known as the Nassau County Charter [L, *975 1936, ch. 879, as amd. by L. 1937, ch. 618, and subsequently]) and its own local laws govern the matter of its police discipline. Subdivision 4 of section 76 of the Civil Service Law provides basically that nothing in section 75 or section 76 will affect any local laws relating to the removal or suspension of civil service employees in a competitive status, which includes the police in Nassau County. Local Law No. 3 of 1945 amended section 8-3.0 of the Nassau County Administrative Code (L. 1939, ch. 272, as amd.) to provide that the Police Commissioner shall have jurisdiction over the discipline of the Police Department and that he may promulgate and enforce appropriate rules and regulations. The Nassau County Police Commissioner has adopted rules and regulations, and within these,. article IX, rule 9, provides that: “Members of the Department may be suspended from duty whenever in the opinion of the Commissioner of Police such action is necessary ”. Bules 1 through 8 deal with the report of violations, charges and specifications, service, acknowledgments, attendance of witnesses, arraignment procedure and trial procedure. All of this is interesting to the proceeding at hand, not only because it is a reaffirmance of an essential democracy even within the framework of public employment as a police officer, but because it is also the very legal matrix in which this case rests.
Under the local law as amplified by his rules and regulations, the Police Commissioner had the power to suspend. Gould. The suspension of police officers by a Commissioner before the commencement of actual trial or the service of charges has been upheld in various courts in this State. In Brenner v. City of New York (9 N Y 2d 447, 452), the New York Court of Appeals held under a specific provision of the New York City Administrative Code that a suspension of a police officer by the Commissioner without the service of charges was proper: “ so long as departmental charges are filed within a reasonable time after suspension and a trial is thereafter held ”. ( See Matter of Cugell v. Monaghan, 201 Misc. 607; Matter of Morris v. Reid, 210 N. Y. S. 2d 868; Matter of McElroy v. Trojak, 21 Misc 2d 145.)
There is no showing in this' proceeding by the petitioner, who has the burden of proof (Matter of Pruzan v. Valentine, 282 N. Y. 498; Matter of Coombs v. Edwards, 280 N. Y. 361), that the Police Commissioner’s conduct in making the suspension was not supported by substantial evidence (Matter of Evans v. Monaghan, 306 N. Y. 312; Matter of Sowa v. Looney, 23 N Y 2d 329). The mere fact that an officer is not indicted; by a Grand Jury for an alleged crime does not mean he is immune *976 from departmental disciplinary action (People ex rel. Wood v. Department of Health of City of N. Y., 144 App. Div. 628, affd. 202 N. Y. 610; cf. Gardener v. Broderick, 392 U. S. 273, 277-278). Different burdens of proof are involved in criminal cases and in disciplinary proceedings which are only civil actions. Moreover, elements such as judgment factors, attitude and ethicality bear on fitness for police duty quite beyond the strictures of the criminal law.
It would also appear that the Police Commissioner brought charges and conducted a trial within a reasonable time after the suspension. (See Brenner v. City of New York, 9 N Y 2d 447, supra; Haskins v. Warner, 47 N. Y. S. 2d 793.)
Under the most far-flung notion of procedural due process, there can be no claim to an absolute right by all policemen to blanket protection from any suspension, regardless of provocation, until the completion of a formal hearing. Quite reasonably, the individual facts of occurrence must be weighed. The office of a policeman is much too sensitive and much too aligned with considerations of integrity and reputation and appearance. The necessity of maintaining public confidence demands latitude for the discretion of the Police Commissioner, who is in charge of the force. The police force is essentially a paramilitary organization requiring an ongoing discipline which necessitates the ability of its commander to relieve swiftly its members of duties where appropriate.
The private claim of an individual to a hearing must be weighed against the public interests implicit in the total situation. The United States Supreme Court stated in Cafeteria Workers v. McElroy (367 U. S. 886, 895): “ consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action. ’ ’ Also, see, Kelly v. Wyman (294 F. Supp. 887, 891) where the court discussed the necessity: “to balance the private right against the government interest to determine the nature of the hearing ’ ’.
Considering the record in this proceeding, it cannot be said that the Commissioner was unjustified in making the suspension, nor that Patrolman Could was, by the simple fact of his suspension, deprived of essential rights to which he was entitled.
While it is held that Could could have been suspended pending his trial, it is quite another thing as to whether his pay could have been cut off before the completion of the hearing.
Historically, it had been held under the common law that the power to suspend is not inferred from the power to remove, *977 and that under a suspension an officer is merely prevented from discharging any duties, but his office does not fall vacant. ( Gregory v. Mayor, etc., of New York, 113 N. Y. 416; Emmitt v. Mayor, etc., of New York, 128 N. Y. 117.) Under these cases, a person suspended from office, but not removed, was entitled to receive his salary.
The Legislature responded to this teaching by specifically authorizing suspension as well as removal of government employees. This in turn led to such abuses as suspension without the filing of charges or without any hearing date ever set for the charges. The Legislature was obliged to amend the Civil Service Law by chapter 853 of the Laws of 1941 by providing that before a person could be removed from office, he should be given written notice of the proposed removal and be furnished with a copy of the charges preferred against him. The amendment further provided that pending the determination of the charges, the person might be suspended without pay for a period not exceeding 30 days. In construing this section (previously subdivision 2 of section 22, and now subdivision 3 of section 23 of the Civil Service Law), the courts have held that an employee suspended for a period in excess of 30 days pending the determination of the charges preferred against him was entitled to recover wages for the period in excess of 30 days after his suspension. This is true even though he was eventually discharged from his position (Matter of Amkraut v. Hults, 21 AD 2d 260, affd. 15 N Y 2d 627; Matter of Schmidt v. Macedonio, 47 Misc 2d 889; cf. Brenner v. City of New York, 9 N Y 2d 447, supra).
These judicial and legislative precedents synthesize quite plainly. A municipal employee may be suspended pending a hearing, and, if he is suspended, his pay can be cut off immediately only if there is an enabling statute. Subdivision 3 of section 75 is such a permissive statute under the New YorK Civil Service Law, although it is to be noted that its express terms permit suspension without pay only where charges have already been filed, and limits pay withholding to 30 days.
Of determinative importance to the proceeding at hand is the recognition that sections 75 and 76 of the Civil Service Law are not applicable to the Nassau County Police Department. As discussed above, this is because of the home-rule pre-emption afforded by the Nassau County Charter and Local Law No. 3 which provides that these matters are within the competency of the rules and regulations of the Police Commissioner of Nassau County. However, there is nothing in the Nassau County Police Rules and Regulations which authorizes a suspension without *978 pay in advance of a hearing. In fact, .subsection 3 of rule 7 of the 'Nassau County Police Rules and Regulations specifically states that the Commissioner’s disciplinary power of suspension without pay comes upon a plea of guilty, or, after being found guilty at a departmental hearing. Rule 9 captioned ‘ ‘ (Suspension ” authorizes suspension in the Commissioner’s discretion, but contains no grant of the additional sanction of pay deprival.
The respondent, however, points to subsection 4 of rule 9 which reads: “ When a member is suspended from the Department without pay, he may engage in another lawful business or calling during the period of suspension. ’ ’ But nowhere in subsection 4 or anywhere else in rule 9 is there the grant of a power to suspend without pay. Subsection 4 of rule 9 is only applicable when there is a suspension without pay validly made under rule 7 which provides for suspension without pay as a sanction only upon a guilty plea or upon a finding of guilt after a hearing. It simply authorizes a policeman, who is suspended without pay as provided elsewhere in the Rules and Regulations, to take interim outside employment.
Indeed, this strict construction of the Rules and Regulations of the Police Department would appear to be justified by all notions of individual rights and governmental obligation. There is good reason to be chary of pay-withholding power where there is no specific statutory grant. Just as the courts would not infer a power to suspend simply from a power to remove (Gregory v. Mayor, etc., of New York, 113 N. Y. 416, supra) this court will not infer a power to withhold pay from the naked power to suspend. It is a serious matter for a municipal employee to be deprived of income for a significant period, even though he may perhaps receive his back pay after being cleared of charges. There must be some reckoning of the economic hardship of a family being deprived of its current income. When the back income is paid, there appears to be no provision in any law giving interest to compensate for any interest paid on moneys borrowed by the family to tide it over, nor is it any answer that a policeman need not suffer any hardship because he can always scramble out and get a side job until he is cleared. Not only does it force the policeman into an employment situation which he may not consider commensurate with his status, skills or temperament, but it also requires him to do some kind of a transient work at a time of particular distress.
The right to income should be subject to great safeguard. As stated by Professor Charles A. Reich in his interesting article “ The New Property ” (73 Yale L. J., 733) which focuses on the increasing centralization of distribution of largesse by the gov- *979 eminent, “ To the individual * * * [the] right to receive income * * * may * * * be the most meaningful and distinctive wealth he possesses See Van Alstyne, “ The Demise Of The Bight-Privilege Distinction In Constitutional Law” (81 Harv. L. Rev. 1439) where the point is made that given the predominant position of government as an employer today discharge or suspension from a government position renders in difficult for a person to find a proper place in private employment.
The Bules and Begulations moreover require the policeman, who is suspended and who is receiving no pay, to report for duty every day. Yet, there is apparently no payment for this continued availability, not to mention the burden on his time schedule. This economic sanction on an employee who is not yet discharged, who may be innocent and who is required to remain available is in a way inconsistent with the philosophy of article 6 of the Labor Law of this State which contains safeguard provisions for the prompt payment and lack of discrimination in paying wages by private employers.
It is doubtless so that discipline is essential to the Police Department, and it may be that the power to suspend without pay in advance of hearing is a necessary tool in police administration. However, the governing rules of the Nassau County Police Department do not provide for suspension without pay in advance of hearing. So long as the Nassau County Police Department has seen fit to require Gould’s daily presence seven days a week, has retained control over his services, and adopts no lawful statutory or regulatory specification to the contrary, this court must hold that, though Gould was not improperly suspended from performance of his duties, he must be paid for the period until he was found guilty at the departmental trial.
If it were to be argued that the Commissioner could adopt new rules empowering interim suspension without pay, this court would have to reply that for purposes of this proceeding he has not done so. Whether such a rule would be constitutional, or whether any interim suspension at all is unconstitutional as petitioner urges, rests in the first instance on the durability of Brenner v. City of New York (9 N Y 2d 447, supra). This important case upheld interim suspension without pay in New York City, but did not deal directly with any issues of constitutionality. It would appear that relevant factors to any such future constitutional inquiry would include the reasonableness of the apparent grounds for suspension, the maintenance of a reviewable record, the nature and identity of the acting tribunals and the charging officials, the promptness of serving and *980 trying charges, and the relationship of the punishment to the offense. See Matter of Murray v. Murphy (24 N Y 2d 160 [decided March 5, 1969]) where the Court of Appeals overturned the dismissal of two police detectives, opining that a police employee has a claim to due process in an administrative proceeding and that it had not been afforded to them. Settle judgment on notice.