■ GARY GOLDIN, Respondent-Appellant, v. BOARD OF EDUCATION OF CENTRAL SCHOOL DISTRICT No. 1, TOWNS OF BROOKHAVEN AND SMITHTOWN, Appellant-Respondent.— In an action by a guidance counselor in defendant's employ, *inter alia,* for a judgment declaring that defendant was violating his constitutional rights in preferring certain charges against him pursuant to section 3020-a of the Education Law, the parties cross-appeal from separate portions of an order-judgment of the Supreme Court, Suffolk County, entered January 31, 1974, upon the parties' stipulation that there are no issues of fact and that a certain motion by plaintiff be treated as for summary judgment. Defendant appeals from so much thereof as permanently enjoins it from prosecuting or taking any other action with respect to the first of said charges and plaintiff cross-appeals from so much thereof as adjudges that defendant may (1) proceed on the second of said charges and (2) continue plaintiff's suspension, without pay but without prejudice to plaintiff's claims with respect thereto. Order-judgment modified, on the law, by (1) striking from the first decretal paragraph thereof the following: "be and it is permanently enjoined from prosecuting or taking any other action", and substituting therefor the following: "may proceed to conduct a hearing"; and (2) adding to the third decretal paragraph thereof a provision limiting the period of suspension without pay to a period of 30 days commencing as of the beginning of the suspension which was imposed. As so modified, order-judgment affirmed, insofar as appealed from, without costs. The first charge alleged that "on or about the night of August 8 and early morning of August 9, 1973, Gary Goldin, Guidance Counselor in the Ward Melville High School, spent the night at a residence * * * in said school district, and slept with an 18-year old female, a member of the 1973 graduating class of said school district, and a student for whom said Gary Goldin was a guidance counselor, the said Gary Goldin not being married to said student and the parents of said student not being then in residence". The second charge alleged that "on or about August 13, 1973, at the District Office * * * Gary Goldin repeatedly denied to school officials and others that he had in fact spent the night at the home of said student, and that such denials were untrue". As for the first charge, plaintiff's main argument is that the school authorities are barred from investigating and/or sanctioning his personal sexual activities by reason of his right to privacy guaranteed by the Constitution of the United States (citing *Griswold* v. *Connecticut*, 381 U. S. 479). In addition, the point is made that there is no claim that the conduct complained of reflected upon plaintiff's ability or performance as a teacher. In our opinion, there was no basis, constitutional or otherwise, for barring a hearing and further proceedings on the first charge. Subdivision 2 of section 3012 of the Education Law provides that tenured teachers — and it is conceded that plaintiff is tenured — "shall not be removed except for any of the following causes, after a hearing, as provided by section three thousand twenty-a of such law: (a) insubordination, immoral character or conduct unbecoming a teacher". We cannot accept plaintiff's argument that his conduct with the young girl in her parents' home while they were away constitutes

purely private conduct. A professional teacher entrusted with forming the moral and social values of our young people must accept the reality that he is held to a high or strict standard of conduct. At bar, there is a serious charge made, with serious implications. Approximately two months after having a particular student under his guidance, plaintiff is accused of going to bed with her. Such conduct might be susceptible to the presumption that the intimate relationship did not develop overnight. The incident conceivably could so upset the community as to undermine the confidence of students and parents of students who now seek plaintiff's guidance. This, in turn, could go to the heart of plaintiff's ability to carry out his duties (see *Yang* v. *Special Charter School Dist. No. 150, Peoria County,* 11 Ill. App. 3d 239). The second charge, i.e., that plaintiff falsely denied his part in the acts constituting the first charge to school officials and others, is not so thorny. As stated by Special Term, this charge "presents the issue whether such falsehoods were reflective of plaintiff's lack of moral character and of insubordination, both of which, among others, are grounds for discipline, Education Law, sec. 3012". We agree with Special Term that section 3020-a of the Education Law is not unconstitutional insofar as it permits suspension without pay pending a hearing. The suspension is discretionary, not mandatory, and as such is always subject to judicial review. Furthermore, the provisions of the statute are such as to insure *prompt* disposition of the charges and, of course, if the employee is acquitted, he will be restored with full pay for any period of suspension. Within five days after receiving the charges, the employing board must determine whether probable cause exists. If so, a written statement specifying the charges in detail and outlining his rights, must be immediately sent to the employee by certified mail. The employee may be suspended at that time. In other words, the suspended employee is given detailed notice of the charges against him. We are aware that this view concerning suspension without pay is contrary to that expressed by the Fourth Department recently in *Matter of Jerry* v. *Board of Educ. of City School Dist. of City of Syracuse* (44 A D 2d 198). We decline to follow that decision for several reasons. First, we do not agree with the view expressed therein (p. 203) that section 3020-a contains no provision granting the power to deny pay during suspension. Subdivision 4 of section 3020-a concludes as follows: "If the employee is acquitted he shall be restored to his position *with full pay for any period of suspension* and the charges expunged from his record" (emphasis supplied). The italicized phrase would be meaningless unless suspension without pay pending the hearing and determination was contemplated (cf. *Matter of Gould* v. *Looney,* 34 A D 2d 807, modfg. 60 Misc 2d 973). Similar wording in subdivision 7 of section 2573 of the Education Law (formerly § 872) has been interpreted for many years as permitting suspension of a teacher without pay pending a hearing (see *Matter of Wolf* v. *Board of Educ. of City of N. Y.,* 184 Misc. 890 [1945]; *Matter of Mitchell* v. *Board of Educ. of City of New Rochelle,* 252 App. Div. 873 [1937]; *Matter of Sife* v. *Board of Educ. of City of N. Y.,* 65 Misc 2d 383, affd. 39 A D 2d 841; see, also, Education Law, § 2566 [formerly § 870]). Second, while we acknowledge that hardship might exist in individual cases, the fact is the concept or practice of suspension without pay pending a hearing is not constitutionally invalid, per se. There is nothing in the several cases of the Supreme Court of the United States cited in the *Jerry* case (*supra*) to suggest otherwise (e.g., *Fuentes* v. *Shevin,* 407 U. S. 67, 81; *Board of Regents* v. *Roth,* 408 U. S. 564; *Perry* v. *Sindermann,* 408 U. S. 593). It is interesting to note that the court in the

*Jerry* case (*supra*, p. 207) recognized that action on the part of the employees which substantially delayed the ultimate determination of the matters "might well justify applications by respondent boards for permission to cease payment of compensation from the date of the occurrence of such delays". The concern is that the suspended employee must not be deprived of property rights without due process. We feel that section 3020-a is not defective on that score because it provides for *prompt* disposition of the charges and, as noted above, requires that the employee be given written notice of the charges against him at the time of suspension. There is no question of postponing a hearing until after an employee's pay is withheld (see *Boddie* v. *Connecticut*, 401 U. S. 371, 378–379), but only a recognition that a professional teacher occupies a very sensitive position and that a period of time must elapse before the hearing procedures can be completed. Naturally, the suspension without pay cannot be indefinite. Subdivision 7 of section 2573 of the Education Law, mentioned above, states that suspensions cannot be for more than 90 days. Section 75 of the Civil Service Law provides that suspensions without pay cannot exceed 30 days. In contrast, section 3020-a contains no limitation and, in this regard, we deem it deficient. We believe however, that such a limitation can and should reasonably be supplied to section 3020-a, while calling the Legislature's attention to this deficiency. Since the parties had no statutory guidance, we are reluctant to sanction a 90-day suspension without pay. Instead, we deem 30 days to be more reasonable and hold it was proper to suspend plaintiff without pay for 30 days. Despite the fact plaintiff himself prevented the hearing from taking place, he should receive his salary for the period thereafter. Martuscello, Cohalan and Munder, JJ., concur; Hopkins, Acting P. J., concurs in the result, with the following memorandum, in which Martuscello, Cohalan and Munder, JJ., concur: Though the right of privacy enjoys a constitutionally protected status from unwarranted governmental interference (*Griswold* v. *Connecticut*, 381 U. S. 479), the right is not absolute. It yields whenever valid governmental purposes are enforced by means reasonably adapted to achieve a permissible objective (cf. *Richards* v. *Thurston*, 424 F. 2d 1281, 1283; *Jackson* v. *Dorrier*, 424 F. 2d 213, cert. den. 400 U. S. 850; *Thom* v. *New York Stock Exch.*, 306 F. Supp. 1002). Public education is a governmental purpose which requires teachers to possess qualities complying with a prescribed standard of fitness. "We find no requirement in the Federal Constitution that a teacher's classroom conduct be the sole basis for determining his fitness. Fitness for teaching depends on a broad range of factors" (*Beilan* v. *Board of Educ.*, 357 U. S. 399, 406). Subdivision 2 of section 3012 of the Education Law states several of those factors. Even as a private employer may inquire into, and take action against, an employee who conducts himself in violation of the rules of his employment or the ordinary expectation of trust arising out of the employment without violating the employee's right of privacy (e.g., *Earp* v. *City of Detroit*, 16 Mich. App. 271), so a board of education has like powers. At this point where the proceeding before the board of education is in the pleading stages, the charge of a relationship between plaintiff and his young student alleges a matter with which the board is vitally concerned — whether plaintiff used his position as teacher to establish that relationship and whether that relationship has adversely affected plaintiff's fitness as a teacher within the community and the school system. These issues must await a trial where the board has the burden of proving the facts of unfitness (cf. *Fisher* v. *Snyder*, 476 F. 2d 375). The constitutional test of a violation of privacy is essentially one of balancing the individual's right to be let alone and

the State's interest in penetrating his privacy; it is not, in the context of the issues before us, to be determined by the rules governing a tort claim for damages against an intruder of an individual's privacy (see, e.g., *Nader* v. *General Motors Corp.*, 25 N Y 2d 560; *Hamberger* v. *Eastman,* 106 N. H. 107; *LeCrone* v. *Ohio Bell Tel. Co.,* 120 Ohio App. 129). As the matter appears before us, the manifest interest of the board in inquiring into the character and integrity of its teachers in the educational process overrides plaintiff's right to be let alone (*Adler* v. *Board of Educ.*, 342 U. S. 485, 493). We do not, of course, express any opinion as to the ultimate question whether plaintiff's conduct does demonstrate his unfitness to be employed by the board. That must await the result reached in the proceeding brought by the board. Brennan, J., dissents and votes to modify the order-judgment only insofar as it authorizes the continuance of plaintiff's suspension without pay pending disposition of the second charge; and otherwise to affirm the order-judgment, with the following memorandum. As to the first charge, I agree with the rationale of the opinion at Special Term and would only add that plaintiff is entitled to protection from inquiry under the principle enunciated in *Griswold* v. *Connecticut* (381 U. S. 479) governing the penumbral constitutional right of privacy. This principle has been extended to situations beyond the limited area of the marital relationship (*Eisenstadt* v. *Baird,* 405 U. S. 438). While I allow that the right of privacy is not absolute and loses cogency when the intrinsically private act takes place in public, that is not the situation at bar. I do not consider the case of *Yang* v. *Special Charter School Dist. No. 150, Peoria County* (11 Ill. App. 3d 239), cited by the majority, to be controlling. In *Yang,* the teacher and a student then enrolled in Peoria High School were apprehended by the police while playing strip poker, in a naked or partially undressed state, in an automobile parked on a public thoroughfare. A criminal charge was prosecuted, with attendant publicity in the community. Clearly, that is not the situation here, where the consensual incident took place between the teacher and a former student in the private confines of her parents' residence. I see no warrant for permitting an inquiry for the avowed purpose of establishing a meretricious relationship between the teacher and the young lady involved while she was a student under his guidance. There is no such specification in the first charge and I consider inquiry in this regard beyond the scope of the charge. Additionally, I feel an inquiry for this purpose, as suggested by the majority, would be an exercise in futility, since it is apparent that proof of such prior relationship is not available to the board or it most certainly would have been the subject of another and separate charge. I do not share the view of the majority that the suspension of plaintiff without pay was warranted under section 3020-a of the Education Law. Rather, I am in accord with the view expressed in *Matter of Jerry* v. *Board of Educ. of City School Dist. of City of Syracuse* and *Matter of Soda* v. *Christner* (44 A D 2d 198, 204), viz.: "Appellants contend that they have never had a meaningful opportunity to defend the charges against them and that the deprivation of their pay without such a hearing violates the due process clause of the Fourteenth Amendment. There are no specific guidelines for the type of hearing, but certainly a fair hearing should be afforded them. 'The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings. That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that

justifies postponing the hearing until after the event' (*Boddie* v. *Connecticut*, 401 U. S. 371, 378–379). To deny them compensation until a final determination after a meaningful hearing, except in cases of unusual circumstances which are not present in the instant cases, would not fulfill the promise of the due process clause (*Mullane* v. *Central Hanover Trust Co.*, 339 U. S. 306, 313)." It is noted that in *Jerry* (*supra*) the Appellate Division, Fourth Department, found no extraordinary situation or unusual circumstances even though that case involved restraint and punishment by the teacher of his students, and the *Soda* case (*supra*) involved the teacher's alleged mental disability. Lesser consideration should not be accorded plaintiff in the present instance, where no emergent situation was presented, and he, too, was deprived of a substantial property interest prior to a hearing. I conclude, as in *Jerry* (*supra*), the plaintiff here is entitled to receive such back pay as is due him, together with future regular pay, until such time as a final determination is made by the board after a hearing. Finally, I, do not believe that delay in holding the hearing to date may be attributable to plaintiff. He had, in my view, a valid reason for asserting his constitutional rights in a legal forum.