ANGELINA SINICROPI, Petitioner, v ROBERT J. BENNETT, as Deputy Director of Probation of the County of Nassau, et al., Respondents.

Second Department, March 21, 1983

**APPEARANCES OF COUNSEL**

*William D. Friedman* for petitioner.

*Edward G. McCabe, County Attorney (Robert O. Boyhan* of counsel), for respondents.

**OPINION OF THE COURT**

O'CONNOR, J.

The issue for resolution is whether a tenured civil servant is entitled to be paid her salary for the period between the government employer's initial determination dismissing the employee from her position, which initial determination was annulled by this court for procedural error, and a subsequent determination, made upon remittitur, which also dismissed the employee and which we now find to have

been properly made. Constrained by *stare decisis,* this court must answer in the affirmative. Nevertheless, I believe that the analysis compelling this result requires re-examination.

## THE FACTS

In her petition, Angelina Sinicropi alleges that on June 20, 1978 she was dismissed from her tenured position with the Nassau County Department of Probation after a hearing upon charges of misconduct. This court annulled that determination and remitted the matter for a *de novo* determination on the original hearing record by a qualified official other than the one who had improperly made the original determination (*Sinicropi v Milone,* 80 AD2d 609).

On July 21, 1981, an identical determination was made. The instant proceeding was then brought to annul the second determination, but a review of the record discloses no grounds for disturbing the findings of guilt or the penalty of dismissal. Petitioner insists, however, that under the logic of recent decisions of this court and the Court of Appeals she is entitled to be paid by the county for the 37-month period between determinations even though she performed no services and was guilty of the misconduct causing her suspension and eventual dismissal. Unfortunately, petitioner is correct.

## THE LAW

In *Matter of Tanner v County of Nassau* (88 AD2d 661, 662), this court stated: "The law is clear that when a determination imposing sanctions under section 75 of the Civil Service Law is annulled, the employee is entitled to be reinstated to his or her former position with back pay until such time as a new determination may be rendered which again punishes the employee (cf. *Wind v Ravo,* 69 AD2d 879; *Wind v Green,* 78 AD2d 695; *Matter of Romeo v Union Free School Dist., No. 3, Town of Islip,* 64 AD2d 664)." (See, also, *Matter of McLaughlin v North Bellmore Union Free School Dist.,* 86 AD2d 870.) In reaching that conclusion, this court relied on earlier interpretations of subdivision 3 of section 75 of the Civil Service Law, which provides in relevant part: "Pending the hearing and determination of charges of incompetency or misconduct, the

officer or employee against whom such charges have been preferred *may be suspended without pay for a period not exceeding thirty days.* If such officer or employee is found guilty of the charges, the penalty or punishment may consist of a reprimand, a fine not to exceed one hundred dollars to be deducted from the salary or wages of such officer or employee, suspension without pay for a period not exceeding two months, demotion in grade and title, or dismissal from the service; provided, however, that the time during which an officer or employee is suspended without pay may be considered as part of the penalty. If he is acquitted, he shall be restored to his position with full pay for the period of suspension" (emphasis supplied).

Earlier decisions established the principle that an employee was entitled to reinstatement to the public *payroll* after expiration of the statutory period (i.e., 30 days) even though his suspension continued thereafter. The employer's obligation to pay, being independent of the employee's obligation to render services (see, e.g., *Matter of Pelaez v Waterfront Comm. of N. Y. Harbor,* 77 AD2d 947; *Levine v New York City Tr. Auth.,* 70 AD2d 900, affd 49 NY2d 747; *Matter of Yeampierre v Gutman,* 52 AD2d 608, mot for lv to app dsmd 40 NY2d 918; *Matter of Damino v Shapiro,* 50 AD2d 888, affd 40 NY2d 1056; *Matter of Maurer v Cappelli,* 42 AD2d 758; *Matter of Prezio v De Santis,* 38 AD2d 772; *Matter of Gould v Looney,* 34 AD2d 807; *Hussey v Town of Oyster Bay,* 24 AD2d 570; *Matter of Amkraut v Hults,* 21 AD2d 260, affd 15 NY2d 627), was likewise independent of the *merits* of the employer's disciplinary case against the employee. Hence, the employer's obligation to pay continued uninterrupted until all litigation ceased — even if the suspension, dismissal or other disciplinary action was found, in retrospect, to have been wholly justified on the merits (see *Matter of Toro v Malcolm,* 44 NY2d 146, 151; *Gerber v New York City Housing Auth.,* 42 NY2d 162, 165; *Matter of Horton v Kammerer,* 84 AD2d 841; *Matter of Thompson v New York City Tr. Auth.,* 78 AD2d 543; *Matter of Rider v Board of Trustees of Vil. of Rockville Centre,* 78 AD2d 856; *Matter of De Marco v City of Albany,* 75 AD2d 674, 675; *Matter of Fusco v Griffin,* 67 AD2d 827; *Kearse v Fisher,* 67 AD2d 963; *Matter of Burrison v New York City*

*Tr. Auth.*, 60 AD2d 651; *Matter of Gibson v.Board of Educ.*, 59 AD2d 963, affd 45 NY2d 884; *Cassidy v Police Dept., County of Nassau*, 54 AD2d 682; *Matter of Lytle v Christian*, 47 AD2d 824; *Matter of Stein v Murphy*, 44 AD2d 796; *Matter of Mason v Perrotta*, 41 AD2d 916; *Moquin v Lowery*, 35 AD2d 661; *Matter of Amkraut v Hults*, 21 AD2d 260, affd 15 NY2d 627, *supra*).

The rationale for such a conclusion was stated by the First Department in the landmark case of *Matter of Amkraut v Hults (supra)*. The court ruled that under subdivision 3 of section 75 of the Civil Service Law, a public employee suspended for a period in excess of 30 days, who is thereafter dismissed, could recover wages or salary for the excess period if the delay in reaching the dismissal determination was not caused by the fault of the employee.[1] The majority opinion reasoned (p 263) that the language of the provision "indicates an intention that hearings on charges should not be unreasonably protracted, but should be disposed of expeditiously" because as a practical matter the accused frequently loses all income during suspension and is reluctant to seek other employment, particularly if he has acquired tenure or pension rights. With respect to the appropriate remedy for the employer's tardiness, the majority ruled that the employer must pay the employee his wages or salary during the excess period of suspension (*supra*, p 263): "In all fairness then a prompt disposition is desirable from the standpoint of all parties. Where that does not occur, he who is responsible should assume the risk of liability for compensation."

The dissenting opinion, demonstrating that the majority assumed it was writing on a *tabula rasa*, pointed out that traditionally the remedy for the employer's delay in disciplinary matters was commencement by the employee of a special proceeding in the nature of mandamus for reinstatement to his position pending the determination, and that his right to receive his wages or salary was conditioned upon this initial discretionary relief (21 AD2d 260, 263, *supra*).

---

1. Respondents do not raise the issue of culpable tardiness on petitioner's part, and the record before us in this proceeding would not permit an inference that she was dilatory in pursuing her claims.

This court aligned itself with the First Department in *Matter of Gould v Looney* (34 AD2d 807, *supra*), agreeing with Special Term's award of back pay, except to the extent that a portion of it was attributable to the statutorily authorized 30-day payless suspension period. Special Term's opinion in *Matter of Gould v Looney* (60 Misc 2d 973, 976-977) had gone so far as to argue that at common law an employee who was suspended but not dismissed had been entitled to receive his salary.

Similarly concluding that the right to salary continued until dismissal from employment, the Court of Appeals, in construing the cognate provision of section 3020-a of the Education Law in *Matter of Jerry v Board of Educ.* (35 NY2d 534), held that a tenured teacher could not lawfully be suspended without pay. Section 3020-a states in relevant part:

"2. Disposition of charges * * * *The employee may be suspended pending a hearing on the charges and the final determination thereof* * * *

"4. Post hearing procedures * * * Within thirty days of receipt of [the] hearing report the employing board shall implement the recommendations thereof, which shall include the penalty or punishment, if any, of a reprimand, a fine, suspension for a fixed time without pay or dismissal. *If the employee is acquitted he shall be restored to his position with full pay for any period of suspension* and the charges expunged from his record" (emphasis supplied).

The four-member majority of the court rejected the dissenters' argument that the foregoing emphasized portion of the last sentence in subdivision four of section 3020-a clearly implied that suspensions of tenured teachers were to be uncompensated absent acquittal of charges (35 NY2d, at pp 542, 546). The heart of the majority's rationale was that "[c]ompensation is a matter of such substantive right on the part of the teacher that we conclude that it cannot be taken away from him except pursuant to *explicit statutory authorization*. We do not find such predetermination authorization in section 3020-a as now worded" (*supra,* pp 541-542, emphasis supplied; cf. *Brenner v City of New York,* 9 NY2d 447, 450). This court followed the *Matter of*

*Jerry* holding in *Matter of Wolfson v Board of Educ.* (47 AD2d 748).

### DISCUSSION

To the extent these decisions were based on the premise that a public employee's right to compensation finds its warrant in his right to his employment position, they soundly restated New York law. To the extent, however, that they assumed that title alone to the employment position gave rise to an enforceable claim for wages or salary, without regard to whether the *nonworking* (e.g., suspended or locked-out) employee had an immediately enforceable right to repossession of (i.e., reinstatement to) the position, they inadvertently ignored a common-law distinction, preserved in the statutory provisions cited above (Civil Service Law, § 75; Education Law, § 3020-a) of long standing and crucial significance to the issue of compensation.[2]

---

**2.** Nothing in these recent decisions indicates a repudiation of the traditional substantive law classification of the public employee's rights here involved as *property* rather than *contract*. As was suggested but not fully articulated in the dissent in *Matter of Amkraut v Hults* (21 AD2d 260, 263), the predicating of back pay upon reinstatement of the employee to his position was not simply a quirk of New York's complicated procedural rules; rather, it reflected the classic substantive property law principles forming the theoretical underpinnings for a public servant's rights in his position or office and the emoluments incident thereto. New York has, with reasonable consistency, rejected contract analysis over the years in favor of real property principles in analyzing rights in public offices (as distinguished from other public service positions) (see *Nichols v MacLean,* 101 NY 526, 533-534; *McVeany v Mayor, Aldermen & Commonalty of City of N. Y.,* 80 NY 185, 190, 194-195; *State Div. of Human Rights [Geraci] v New York State Dept. of Correctional Servs.,* 90 AD2d 51, 68-69, n 8). In so doing, New York has merely followed the common-law conception that rights in offices were most closely analogous to rights in real property (see 3 Kent's Commentaries [14th ed], p 454). As a matter of procedural law, therefore, recovery of an office and its emoluments (including salary or fees) was effected through *possessory* actions: through assizes of novel disseisin for some several centuries up to the time of Chancellor Kent (see 2 Pollock and Maitland, History of English Law [2d ed], pp 125-127, 135; 3 Kent's Commentaries [14th ed], p 454), and through writs of restitution and eventually mandamus (see Weintraub, English Origins of Judicial Review by Prerogative Writ: Certiorari and Mandamus, 9 NY Law Forum 478, 486-487, 492-493, 498). Today CPLR article 78 is utilized almost exclusively in public employment disciplinary matters, even in preference to quo warranto (see Civil Service Law, § 76, subd 1; Education Law, § 3020-a, subd 5; Executive Law, § 63-b; *McGraw v Gresser,* 226 NY 57, 59; *People ex rel. Hoefle v Cahill,* 188 NY 489; *People ex rel. Tate v Dalton,* 158 NY 204, 212-213; *Matter of Dekdebrun v Hardt,* 68 AD2d 241; *Matter of Smith v Dillon,* 267 App Div 39; *People ex rel. Mesick v Scannell,* 63 App Div 243).

With respect to public employment positions other than offices, the post Civil War statutes conferring tenure status upon veterans holding public employment positions (see *Manko v City of Buffalo,* 271 App Div 286, affd 296 NY 905; *People ex rel. Cochrane v Tracy,* 35 App Div 265, 269; *Matter of Torney,* 11 Misc 291) were interpreted by the courts as assimilating such employees' security rights in their tenured positions to those

Contrary to Special Term's statement in *Matter of Gould v Looney* (60 Misc 2d 973, *supra*), at common law a public employee was *not* entitled to be paid his wages or salary during suspension. A suspension was deemed to be but one kind of *ouster* (i.e., dispossession) of the employee from his office or position, to which he nevertheless retained *title* pending a final valid disciplinary determination (see *Matter of Jerry v Board of Educ.*, 35 NY2d 534, 545-546 [dissent], *supra*).[3] Reinstatement to the position (requiring the employer to *accept* and pay for his services) was a

of public officers in their offices. Hence, tenured positions came to be analyzed under the same property principles that had been used for offices. (See, e.g., *Sutliffe v City of New York*, 132 App Div 831; *O'Hara v City of New York,* 46 App Div 518, 521-522, affd on opn at App Div 167 NY 567; compare *Eckerson v City of New York,* 80 App Div 12, 14-15, affd 176 NY 609, with *O'Donnell v City of New York,* 128 App Div 186; *Warner v Board of Educ.,* 14 AD2d 300; *Matter of Sehulster v Carney,* 196 Misc 356; cf. *Kunz v City of New York,* 286 App Div 252, affd 3 NY2d 834.) The use of such analysis for tenured teaching positions faced substantially more difficulty in winning acceptance (presumably because of the former predominant role of the State Commissioner of Education in reviewing disciplinary determinations) (see *Steinson v Board of Educ.,* 49 App Div 143, 149, affd 165 NY 431, 435; *Murphy v Board of Educ.,* 87 App Div 277; *Matter of O'Connor v Emerson,* 196 App Div 807, affd 232 NY 561; *Matter of Wilson v Board of Educ.,* 276 App Div 482).

As an historical matter, therefore, recovery of salary annexed to an office or tenured public employment position has come to require, as a condition precedent to such relief for the titled employee, a judicially recognized right to immediate reinstatement to (i.e., repossession of) such office or position (see Civil Service Law, § 77; *Friedman v State of New York,* 24 NY2d 528; *Toscano v McGoldrick,* 300 NY 156; *Bloome v Glasser,* 33 AD2d 563, affd on opn at App Div, 26 NY2d 864; *Smith v Helbraun,* 24 AD2d 518; *Van Valkenburgh v Mayor, Aldermen & Commonalty of City of N. Y.,* 49 App Div 208, 210-212; *Burgos v State of New York,* 40 Misc 2d 971; cf. *Matter of Pfingst v Levitt,* 44 AD2d 157, mot for lv to app den 34 NY2d 518; *Matter of Metz v Kelly,* 43 Misc 2d 903 [opn by GULOTTA, J.]). Mere title, without an immediate possessory right, would not suffice (see *Matter of Rindone v Marsh,* 183 Misc 10; *Matter of Sehulster v Carney,* 196 Misc 356, *supra;* cf. *Reiser v State of New York,* 198 Misc 647, 650). Conversely, contract principles such as mitigation of damages have been held to be inapplicable (see *Matter of Jerry v Board of Educ.,* 35 NY2d 534, 547 [dissent]; *Fitzsimmons v City of Brooklyn,* 102 NY 536; *Picconi v Lowery,* 43 AD2d 928; *Kaminsky v City of New York,* 20 AD2d 692; *Sutliffe v City of New York,* 132 App Div 831, *supra;* but see *Prowler v City of New York,* 216 App Div 824, affd 243 NY 607; *Adler v Board of Educ.,* 33 Misc 2d 789), and may preclude the Legislature from modifying or abolishing tenure rights in the future (see *Indiana ex rel. Anderson v Brand,* 303 US 95, reh den 303 US 667; *Minnesota Assn. of Public Schools v Hanson,* 287 Minn 415; *State ex rel. McKenna v District No. 8 of Town of Milwaukee,* 243 Wis 324). Indeed, as specific performance, the remedy of reinstatement is simply not available under New York contract principles (see *Matter of Staklinski [Pyramid Elec. Co.],* 6 NY2d 159, 164-165 [dissent]; *Cuppy v Ward,* 227 NY 603; *Bleendes v Fellerman,* 264 App Div 223; *Miller v Warner,* 42 App Div 208).

3. Generally any substantial interference with a public employee's right to render services and to receive his wages or salary is deemed an ouster under the property analysis described in footnote 1. This would include a change in grade, duties or salary as well as an unauthorized lockout of a probationary employee prior to the employer's determination upon a dismissal recommendation (see *Thoma v City of New York,* 263 NY 402; *Matter of Golomb v Board of Educ.,* 92 AD2d 256 [decided herewith]; *Matter of Rathbone v Board of Educ.,* 47 AD2d 172, affd on opn at App Div 41 NY2d 825; *Hilton v*

precedent to any claim for *back* wages or salary (see *Toscano v McGoldrick,* 300 NY 156).

It was therefore hardly surprising that when the Legislature acted in derogation of common law to authorize suspension of public employees, payless or otherwise (see Civil Service Law, § 75, subd 3; Education Law, § 3020-a, subds 2, 4; *Emmitt v Mayor, Aldermen & Commonalty of City of N. Y.,* 128 NY 117; *Gregory v Mayor, Aldermen & Commonalty of City of N. Y.,* 113 NY 416; *Matter of Bramer v Board of Parole, Div. of Parole of State of N. Y.,* 247 App Div 414; *Morris v Reid,* 210 NYS2d 868, 869; but see *Matter of Cugell v Monaghan,* 201 Misc 607; *Matter of Lindquist v City of Jamestown,* 192 Misc 906, 910), the initial judicial interpretations of the legislation found no intention to repudiate the ancient, consistently utilized and eminently practical principle that wages or salary was an incident of *possession of,* and not merely *title to,* an office or position. Logically, the remedy for violation of the statutory right to a speedy disciplinary determination after suspension was held to be *reinstatement* pending such determination, and wages or salary (including any back pay) followed such reinstatement. Absent reinstatement, no claim for back pay could be honored even if the employee's dismissal had been declared invalid. (See *Matter of Wilson v D'Angelo,* 10 AD2d 706, mot for lv to app den 10 AD2d 912; *Matter of Edelstein v Gale,* 5 AD2d 811; *Matter of Bush v Beckmann,* 283 App Div 1070, 1071; *Mackay v Powers,* 274 App Div 987; *Matter of Kelly v Board of Educ.,* 234 App Div 239, affd 259 NY 518; *Matter of Phinn v Kross,* 26 Misc 2d 889, 894-895, affd 15 AD2d 641; *Matter of Whalen v Corsi,* 201 Misc 39, 43, affd 279 App Div 1113,

Cram, 112 App Div 35; *People ex rel. Strahan v Feitner,* 49 App Div 101; *People ex rel. Jones v Saxe,* 92 Misc 409). Likewise, a suspension is merely one species of ouster, distinguishable from others in that it does not vacate the position. involved; the suspended incumbent still holds title to the position and the employer is without any authority to appoint a successor or substitute. Hence, absent specific authority to suspend an officer or employee, a public employer is not permitted to oust (i.e., dispossess) him in the guise of suspension on the ground that it does have authority to remove (i.e., dismiss) him by stripping him of both title and possession. (See *Emmitt v Mayor, Aldermen & Commonalty of City of N. Y.,* 128 NY 117; *Gregory v Mayor, Aldermen & Commonalty of City of N. Y.,* 113 NY 416; *Matter of Bramer v Board of Parole, Div. of Parole of State of N. Y.,* 247 App Div 414; but see *Matter of Cugell v Monaghan,* 201 Misc 607, 614; *Matter of Lindquist v City of Jamestown,* 192 Misc 906, 910.)

mot for rearg den 280 App Div 901; *Matter of Lindquist v City of Jamestown,* 192 Misc 906, *supra; Paris v City of New York,* 189 Misc 445; *Halpin v City of New York,* 54 Misc 128; but see *Matter of Prezio v De Santis,* 38 AD2d 772, *supra.*)

In the matter under review, no reinstatement (voluntary or compelled) was ever obtained and, given this court's confirmation of the latest dismissal determination, no reinstatement can be ordered in the future. Thus petitioner can rightfully complain of no injury to her by the respondent employer other than a violation of her statutory right to a prompt *valid* disciplinary determination. This right, of course, was a mere *procedural* right, and not one of substance. This court had remedied the injury by affording her another disciplinary determination and has now confirmed the validity of that new determination. Under this analysis, petitioner can demand nothing more (cf. *Matter of Rathbone v Board of Educ.,* 47 AD2d 172, 175-176, affd on opn at App Div 41 NY2d 825). Under the analysis in the line of decisions following *Matter of Jerry v Board of Educ.* (35 NY2d 534, *supra*), and *Matter of Amkraut v Hults* (21 AD2d 260, affd 15 NY2d 627, *supra*), however, the petitioner here was entitled to *continue* receiving her salary pending a prompt disciplinary determination, and this substantive right to compensation for services *not* rendered could not be limited or defeated by the board by affording her a *quick* but *sham* hearing and determination.

Therefore, even though neither the common law nor the Legislature required that a public employee's pay meter continue to run — for weeks or even *years* — after the employer's refusal of his services through suspension or initial dismissal, the Court of Appeals analysis in its decision in *Jerry* and its affirmance in *Amkraut* mandate that petitioner be paid her accrued salary for the 37-month period between the initial, invalid determination directing her dismissal and the subsequent determination on remittitur which also directed her dismissal and which is hereby confirmed by this court.

The petition, therefore, should be granted to the extent of directing respondent employer to pay petitioner her back

salary for the period requested, less any compensation which she may have earned in any other employment or occupation and any unemployment insurance benefits she may have received during such period. The determination under review should be confirmed and in all other respects, the proceeding should be dismissed, on the merits.

GIBBONS, J. P., WEINSTEIN and BOYERS, JJ., concur.

Petition granted to the extent of directing respondents to pay petitioner the salary which she would have earned between June 20, 1978, the date of the original determination terminating her employment, and July 21, 1981, less the amount of compensation which she may have earned in any other employment or occupation and any unemployment insurance benefits she may have received during such period. Determination confirmed, without costs or disbursements, and in all other respects, proceeding dismissed on the merits.